PERRY v. FARMERS' MUTUAL LIFE INSURANCE CO.

(Filed April 7, 1903.)

INSURANCE—*Fire Insurance—Assessments—Waiver—Notice—Acts (Private) 1893, Ch. 343—Acts (Private) 1895, Ch. 15.*

An acceptance of an overdue assessment by a fire insurance company, after the property is burned, the company having notice thereof, is a waiver of the forfeiture of the policy.

ACTION by T. J. Perry against the Farmers' Mutual Fire Insurance Company, heard by Judge *W. S. O'B. Robinson* and a jury, at October Term, 1902, of the Superior Court

of UNION County. From a judgment for the plaintiff, the defendant appealed.

*Adams & Jerome,* for the plaintiff.
*Redwine & Stack,* for the defendant.

CONNOR, J. This is an action on an insurance policy issued by the defendant company through its Union and Stanly branch, covering several houses and contents belonging to the plaintiff, including his dwelling, for the amount of $300. The total insurance was nine hundred dollars. The defendant was incorporated by Chapter 343, Private Laws of 1893, and amended by Chapter 15, Laws of 1895. It was provided by the charter that the insurance business of the Association should be conducted by and through branches thereof, which should consist of fifty or more persons. That said branches should be organized in the manner set out in the by-laws. That the territorial limits of any branch should not comprise more than two or less than one county. That membership in the Association should be acquired only through some regularly organized branch. That all losses accruing to the Association should be paid by a pro-rata assessment of all the members of the branch of the Association in which said losses should occur, according to the amount of the insurance held by said member and no member should be liable for any loss occurring outside of the branch of which he was a member. The policy was issued by "The Farmers' Mutual Fire Insurance Association of North Carolina—By and through the Union and Stanly Branch," and bears date April 9th, 1896. The By-Laws of the Association known as the "Rules and Regulations" governing branches are made a part of the policy. Article IV of the By-Laws and Regulations provides "That losses accruing to the Association shall be paid by a pro-rata assessment from all the members of such branch of the Association in which loss may occur. That the time for

collection of any assessment shall be sixty days from date of notification of loss.   Any member failing to pay his assessment within sixty days from date of notice forfeits all rights, claims and privileges in the Association and his policy shall be cancelled without further notice.   Any member forfeiting his policy may be re-instated upon the approval of the president of his branch by the payment within sixty days of all arrears.   But there shall be no liability under his forfeited policy until such reinstatement and payment."

The plaintiff was a member of the Union and Stanly Branch.   At a meeting of the supervisors of said branch on October 18, 1900, a resolution was adopted that the two counties forming said branch, each form a separate branch. That said resolution take effect November 1st, and that the old organization be liable for all losses occurring up to November 1, 1900.   On the same day a meeting of the members of Union County Branch was held.   Officers were duly elected and it was resolved that the former members in Union County of the Union and Stanly Branch be members of the Union County Branch and that their policies now held by them be valid in the new organization.   The plaintiff resided in Union County.   The plaintiff's dwelling was destroyed by fire on November 16, 1900.

The plaintiff testified that he notified Mr. A. R. Edwards, who was township supervisor and adjuster for defendant of the loss.   He went a day or two after the fire and after viewing the premises estimated the loss at over one thousand dollars.   Plaintiff wrote F. H. Wolfe, who was secretary and treasurer of the defendant company and received a reply from him.   Before the fire plaintiff had received a notice of an assessment and came to Monroe to pay it and Mr. Dillon who was collecting assessments for the company, before expiration of the time for its payment, but he was out, he went off and forgot it.   After the destruction of the property the

defendant continued to levy and collect assessments on the entire amount of the insurance as though none of the property had been destroyed. The plaintiff introduced notices of assessments and receipts therefor. The plaintiff also introduced a letter from F. H. Wolfe, bearing date March 1, 1901, in which he acknowledged the receipt of notice of loss and explained reason why assessment to pay the same had not been made, the reason having no reference to the failure to pay assessment. He promised to write again. Plaintiff testified that after the receipt of the letter he saw Mr. Phipher and he said he could not pay as plaintiff was one assessment behind. After the fire Mr. Stewart went to Monroe to pay assessment for plaintiff. G. M. Stewart testified that he paid Mr. Dillon the premium over due by plaintiff, after the fire and told him plaintiff was burned out and asked him if it would be all right after plaintiff had failed to pay for sixty days. Dillon accepted the money, but gave no receipt for it, as the notices of assessment with the blank receipt at the bottom of it had been destroyed by fire.

T. P. Dillon testified that F. H. Wolfe was secretary and treasurer of defendant company, but he lived in the country and asked witness to collect the assessment for him, which he did and paid to Wolfe. G. M. Stewart paid assessment for plaintiff due at the time of the fire. He told witness at the time he paid that plaintiff was burned out and that he was behind in the payment of his assessments. Witness did not give receipt but credited amount on book of the company. Witness asked Dr. Ashcraft, the president of the company at that time, as to what he should do in cases when members offered to pay assessments after the time within which they were to be paid had expired. "He told me to accept them and I did so." Defendant objected. Objection overrued. Defendant excepted. Witness was not authorized to reinstate any one who had forfeited by failure

to pay assessments. I told Mr. Wolfe what Stewart told me. Ashcraft did not tell me to receive this money nor in any case to receive money after the fire.

James McNeely, a witness for defendant, was asked if he was authorized to reinstate a person who had forfeited his rights by failing to pay assessments. Plaintiff objected; objection sustained. Defendant excepted.

The court directed the jury that if they believed the evidence to answer the first and second issues "Yes;" the fourth issue $400; the fifth issue "No." The third issue was by consent answered $1,000. The defendant excepted.

In the view which we take of the case it is unnecessary to pass upon his Honor's rulings upon the questions presented by the exceptions in regard to the admissibility of testimony. We do not think the evidence in regard to instructions given by the president to the secretary and treasurer to accept payment of assessments after they were due, sufficient to establish a custom to do so at variance with the by-laws and regulations. Nor do we think that a custom to do so would by implication be extended to a general authority to accept such assessments after the property insured had been burned. The plaintiff's right to recover in this action is not based upon such alleged custom. We do not think that in this case it was material to the rights of the parties to enquire whether the witness was authorized to reinstate members who were behind in their assessments. The plaintiff was not reinstated. The real question is whether upon the whole of the evidence if believed there was a waiver of the forfeiture of the policy by the acceptance of the over due assessment after the fire, with full notice thereof. We think that it is clear that the failure to pay the assessments in accordance with the terms of the contract worked a forfeiture of the policy. We think it equally well settled that the company may by acts of unequivocal character waive such

forfeiture. "If after a' breach of the conditions of the policy the insurer with a knowledge of the facts constituting it, by their conduct lead the insurer to believe that they still recognize the validity of the policy and consider him as protected by it, and induce him to incur expense, they will be deemed to have waived the forfeiture and will be estopped from setting it up as a defense." *Grubbs v. Ins. Co.,* 108 N. C., 472; 23 Am. St. Rep., 62. This elementary principle of law has been frequently applied to cases arising upon insurance policies and while in the extent of its application there is not perfect uniformity, we think that the best considered cases sustain the position that the acceptance and retention of the premium, or assessment, after loss with full knowledge of the facts operates as a waiver. We cite only a few of the many cases found in the reports and text-books bearing on the question.

In *Schoneman v. Ins. Co.,* 16 Neb., 404, the court says: "In other words, where there has been a breach in the conditions of a policy, the company, if it see fit, may take advantage of such breach and cancel the policy. It need not do so, however, but may waive the forfeiture, and this may be done by acts as well as words. But the company, as well as the insured, should act in good faith. If there has been a failure to pay the premium promptly at the day, the company certainly may waive this condition, and if it afterward receive and retain it and deliver the policy, there would seem to be no good reason why the company should not be bound by it. The consideration for the insurance is the premium and if this is paid and appropriated by the company, the time of its payment would not seem to be material."

In *Farmers' Mut. Ins. Co. v. Bowen,* 40 Mich., 147, Cooley, J., uses the following language: "Where a mutual insurance company imposes forfeiture in case a loss occurs

while its assessments are still unpaid, but its local agent receives past due assessments with knowledge of a loss and forwards them to the company without notifying them of it, and they received them and two or three weeks afterward ordered the loss to be paid when adjusted, they can not afterward refuse payment on the ground of the delay in paying the assessments, since they have waived that by receiving them when over due and ordering payment."

In *Titus v. Ins. Co.,* 81 N. Y., 410, the court says: "But we are of the opinion that the claim of the plaintiff is well founded that the forfeiture caused by the foreclosure proceedings was waived by the defendant. After the fire, and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose, to be examined under the clause in the policy hereinbefore mentioned, and he was there subjected to a rigorous inquisitorial examination. It had the right to make such examination only by virtue of the policy. When it required him to be examined, it exercised a right given it by the policy. It then recognized the validity of the policy and subjected the insured to trouble and expense, after it knew of the forfeiture now alleged and it can not therefore assert its invalidity on account of such forfeiture.

When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver can not be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced there-

for, allege the forfeiture. But it may be asserted broadly that if in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel."

We conclude that by the acceptance and retention of the over due assessment after the burning of the property with full notice thereof, the defendant waived forfeiture and continued the policy in force.

His Honor rendered judgment directing the defendant company to make an assessment upon the members of the Union and Stanly Branch thereof to pay the amount of the judgment. It appears that this branch has ceased to exist and that liability was assumed by the Union branch for all losses occurring after November 1, 1900. While this change of liability could not be made without the consent of the policy holders, if it has in fact been accomplished and there is now no such body or organization, it would seem to be impracticable to enforce the judgment in the manner directed. We think that the Union branch is liable to the plaintiff and if the defendant fails or refuses to make the assessment, the plaintiff would be entitled to a mandamus compelling it to do so. The Union branch is not a corporation and is not a party to this action. The remedy must worked out through the defendant corporation. The judgment thus modified is affirmed.

Modified and Affirmed.