The plaintiff sued to recover the amount of an insurance policy for $500 issued by defendant to him on 21 October, 1903, for one year on a stock of goods. The policy contained among others, the following provisions material to be stated: "This policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the subject of insurance be personal property and be or become encumbered by a chattel mortgage. If this policy shall become void or cease, the premium having actually been paid, the unearned portion shall be returned on surrender of this policy, or the last renewal, this company retaining the customary short rate." It was written according to the standard form prescribed by the statute. The premium of $11 was paid. On 11 May, 1904, the plaintiff executed a chattel mortgage to the McClelland Paint Company for $867.16 on the said stock (236) which was duly registered. The defendant did not consent to the giving of the mortgage and had no notice thereof until after the stock of goods was destroyed by fire, which occurred in June, 1904, nor until after the nonwaiver agreement hereinafter mentioned was executed, unless certain correspondence between the plaintiff and H. M. McAden amounted to such consent or notice. The plaintiff wrote to McAden on 18 December, 1903, as follows: "I hope you will not think it presumptuous of me in writing this letter and requesting a loan or an indorsement of my note for $300 for twelve months for the following purpose and conditions: I have recently gone in business on my own account and have bought goods on my own credit, standing to the amount of $1,600, and on which I have paid something over $700, and should you favor me to the extent of this loan, I will apply that to my creditors, which will put me in the position of having goods here in my store $1,000 or more, paid for, that I am willing to give you a chattel mortgage on, to guarantee the payment of this $300. I will, of course, keep my stock up to its present standing, and monthly reducing my indebtedness. I am also carrying my goods insured for $1,000; one-half of insurance is placed with your company. I have not been dealing with banks long enough to have any financial standing with them. I *Page 202 
now have a mortgage of $600 on my house and lot, placed there about the first of this month; $300 of it I have used in reducing my indebtedness; other amount remaining in Mechanics Building and Loan Association until I start and complete two rooms on my house. I am willing to thoroughly satisfy your mind, as to my business condition, by showing you through my store, stock, books, invoices, and receipts." On 21 December, 1903, McAden, as president, replied as follows: "I acknowledge receipt of your letter of 18th and note contents with interest. I regret to say that just at this time I am not in a position to (237) accommodate you in the manner you desire. Regretting not being able to assist you at this time, and wishing you success in your undertaking, I remain," etc. The plaintiff executed a nonwaiver agreement before the adjustment of the loss was undertaken by the defendant's agent. He proposed to prove by himself, first, that he did not know the nature of the contents of this instrument, and, second, that the agent told him that signing the paper would prevent any difficulty in settling the loss. The evidence, on objection of defendant, was excluded. The following issue was submitted: "Is the defendant indebted to the plaintiff upon this policy?" The court charged the jury that if they believed the evidence they should answer the issue "No." Plaintiff excepted. The jury answered the issue "No." Judgment was entered upon the verdict for the defendant, and the plaintiff appealed.
The validity of the provision in a policy of insurance against the creating of encumbrances without the consent of the insurer can hardly be contested at this late day. It has now become the settled doctrine of the courts that the facts in regard to title, ownership, encumbrance, and possession of the insured property are all important to be known by the insurer, as the character of the hazard is often affected by these circumstances. "When a person's interests in a property are qualified or complicated, the motive to care for and protect it is weakened; and, following the principle that in a large majority of cases governs conduct, we may expect to find indifference and often neglect where interested vigilance is required to secure safety. When a person insures property where the title is in dispute, or if it be heavily encumbered, there will sometimes exist a dangerous temptation to withhold protection to such a degree as to invite accident, and this may frequently be done without a conscious intent of wrongdoing on the (238) part of the insured. This fact is always recognized by insurance *Page 203 
companies; and as the success of their undertakings is not based on the exceptional, but the general, principles of business morality, their purpose is to fix relations under the contract that will create no motive on the part of the insured for the commission of crime. It will be found, therefore, that policies generally provide that when the property becomes encumbered, or any change takes place in title or possession, notice of the fact must be given to the company, and its consent had, or a forfeiture will result." Ostrander on Fire Insurance (2 Ed.), sec. 84; Alston v. Ins. Co., 100 Ga. 287; Ins. Co. v. Bernstein, 55 Neb. 260;Lee v. Ins. Co., 79 Iowa 379; Brown v. Ins. Co., 41 Pa. St., 187. It is wholly a matter of agreement, and, when encumbrances are prohibited by the contract, the question of materiality may be regarded as settled. The very nature of the requirement that consent to an encumbrance must first be obtained in order that the policy may remain in force indicates that it is a matter of the first importance to the insurer, to be informed of any such change in the interest of the insured, as it is something that must necessarily control his assent to the continuance of the insurance. It may be said to be of the very essence of this kind of contract that the company should be appraised promptly of any such diminution of interest in the property insured as will tend to lessen the care and diligence in its protection and preservation which the insured would otherwise bestow upon it. The interest of the insured is frequently diminished exactly in proportion as the encumbrance is increased, and it is this fact, which refers directly to the moral hazard of the risk, that chiefly concerns the insurer, and for this reason a frank disclosure of the condition of the property with reference to liens, encumbrance, and title is generally required as a condition to the payment of the loss. This Court has expressly approved this doctrine and sustained the validity of a similar provision in policies of insurance, and for the very reason we have given. In the recent (239) case of Hays v. Ins. Co., 132 N.C. 702, it was held that the existence of an encumbrance on the property insured is a most material fact, and should be communicated to the company, for if made known it would doubtless prevent a longer assumption of the risk. While it is always the duty of the court to enforce contracts as made by the parties, their judgments will usually be tempered with mercy, and express a just partiality for the right; and hence it is frequently found that they are exceedingly reluctant to give effect to arbitrary provisions that are repugnant to the common sentiments of justice, and especially when to do so will result in forfeitures and the defeat of substantial rights. When a warranty or material representation is the subject of contention, the court will generally limit the inquiry to the fact of *Page 204 
whether a warranty or representation exists. If such is found to be the case, and no waiver has resulted, the court has then a plain duty to perform, and this cannot be changed or influenced by any consideration of the manner in which the interests of the parties may be affected. The reasons for the particular provisions of the contract to be enforced can have no significance except as they may explain the intention of the parties. Ostrander on Fire Insurance, sec. 83. It is not difficult to understand why companies should be cautious about insuring property which has been encumbered, when we consider the obvious reason that the contract of insurance is one which depends largely for its value to the company upon the good faith of the insured and the inducement to the insured by reason of his interest in the property to safeguard it in every possible way. In theory, at least, anything which decreases the interest of the insured in the property correspondingly increases the risk. The company wants to keep the owner's interest on the side of the preservation of the property instead of its destruction, and therefore wants the owner to be part insurer with it. Ins. Co. v. Bernstein, supra.
But it is quite sufficient, as we have just seen, to defeat recovery upon the policy for a loss if it provides against encumbrances (240) without the company's consent and this provision is violated. "This Court has uniformly held that where it is expressly provided that the policy upon certain contingencies shall be void, effect will be given to such language." Gerringer v. Ins. Co., 133 N.C. 412. "It will be conceded that, when the motive of the parties does not appear conclusively in the contract itself, the courts will not be justified in going outside to find one; but when it is obvious that the intention of the insurer was to stipulate for that vigilance in the care and protection of the property which can arise only from a substantial, personal interest, the courts cannot, in the performance of their duties, disregard the fact. A distinguished jurist once said: `The judges ought to be curious and subtle to invent reasons and means to make acts effectual, according to the just intent of the parties. They will not, therefore cavil about the propriety of words, where the intent of the parties appears, but will rather apply the words to fulfill the intent than to destroy the intent by reason of the insufficiency of the words.'" Ostrander on Fire Insurance, sec. 23. The intent is most clearly manifested here, and as the stipulation is a just and lawful one, it will be enforced according to its plain meaning and so as to carry into execution the reasonable purpose of the parties.
We see no evidence in this case of any waiver of this stipulation by the company or of any consent that the plaintiff might encumber the *Page 205 
property. The polite reply of the company's president and the expression of his regret to the plaintiff that he could not accommodate him, when requested to indorse his note for $300, and his further wishing him "success in his undertaking," cannot, surely, be given that effect. If it bore on its face the evidence of any consent at all — and we do not think it does — it would be restricted to a loan and mortgage on the property of $300, whereas the plaintiff encumbered it to the amount of $867.16. This left him only an actual interest, the value of his (241) equity of redemption, of about $750, whereas the total insurance amounted to $1,000. But the expression in McAden's letters, "wishing you success in your undertaking," would seem to refer, not to his success in securing the loan from some other person, for, as far as appears, he did not contemplate such a course, but to the success of the business in which the plaintiff says, in his letter, he had recently embarked "on his own account." The plaintiff had not even intimated any intention of borrowing money from any other person, and certainly McAden was not required to anticipate that he would do so, and especially that he would place a mortgage upon his property to secure the loan, without first complying with the plain requirement of his policy, which was then in his possession. It has been held that notice of an intention on the part of the policyholder to do something contrary to the terms of the contract will not estop the company, although not objected to by it at the time, because the company has the right to infer that the holder of the policy intends at the proper time to obtain the assent of the company to the act before it is done. Ostrander, supra, sec. 350;Ins. Co. v. Sorby, 60 Miss. 302; Worachek v. Ins. Co.,102 Wis. 88; Goldin v. Ins. Co., 46 Minn. 473; Sowers v. Ins. Co.,113 Iowa 551. Even if there had been a clearly expressed purpose to mortgage the property, of which the company had notice, it must be remembered that a mere unexecuted intention to do an act is not only revocable and subject to any change of mind on the part of the insured, but it may fairly be taken for granted that the insured will proceed according to the terms of the policy in doing the act, as the law does not presume that a wrong will be committed. But we find nothing in the language of McAden which implies an assent to the mortgaging of the property, nor is there any element of an equitable estoppel in the case. The plaintiff has shown nothing which should have led him to act in a way that prejudiced him or to alter his position to his own hurt, and which he can justly attribute to any conduct on the part of the defendant, nor is he (242) entitled upon the evidence to say that he acted in reliance upon anything which has been said or done by the company or its president. If the misconstrued the plain import of what McAden said, it is his *Page 206 
misfortune to have done so, and not any fault of the company of which he can now justly complain or avail himself.
It is argued though, that the company should have returned or at least tendered the unearned portion of the premium before it could insist upon a forfeiture. The policy expressly provides that the unearned portion of the premium shall be returned on surrender of the policy. This is the contract of the parties, and we are not permitted to change it. There has been no surrender of the policy, but the complaint is drawn and the trial proceeded, upon plaintiff's part, upon the theory that the policy was valid and would not, therefore, be surrendered. The condition precedent to the return of the premium has not been performed, but a refusal to comply with it is to be clearly implied. It has been held in a number of cases that in a case of a breach of condition which invalidates the policy, the company is not bound at its peril, upon notice of such breach, to declare the policy forfeited or to do or say anything to make the forfeiture effectual, and a waiver will not be inferred from mere silence or inaction on its part. It may wait until claim is made under the policy, and then rely on the forfeiture in denial thereof or in defense of a suit brought to enforce payment of it. 6 A. E. (2 Ed.), 939; Dowd v. Ins.Co., 1 N.Y. Supp., 31; Ins. Co. v. Brecheisen, 50 Ohio St. 542; Harrisv. Assn. Society, 3 Hun., 725; Flynn v. Ins. Co., 78 N.Y. 569; Ins. Co.,v. Hull, 77 Md. 498; Todd v. Ins. Co., 100 N.C. (Mich.), 442. The principle is distinctly recognized and approved by this Court in Perry v. Ins. Co., 132 N.C. 283. See, also, Alspaugh v. Ins. Co., 121 (243) N.C. 290. In Hayes v. Ins. Co., 132 N.C. 702, it is said: "When the property was advertised for sale under the mortgage soon after the insurance, this terminated the insurance by the agreement in the policy, and the insured in good faith should have gone at once to the agent of the insurer and applied for cancellation of the policy and the return of a ratable portion of the premium." The language of the Court in Senor v. Ins. Co., 181 Mo., 104, seems to answer this position fully: "From the nature of this contract it falls far short of indicating any surrender of the policy, but the reverse — an earnest effort to enforce it. However, conditions have not yet arisen which would require the defendant to make return of the unearned premium as provided in the contract of insurance." The company is not seeking aggressively to avoid the policy in an action to cancel it, but is only attempting to show it to be void to defeat the plaintiff's action. The defense is asserted to meet the attack of the plaintiff — as a shield and not as a sword. Dowd v.Ins. Co., 1 N.Y., Supp., 31. The return of the unearned part of the premium was not, under the circumstances of this case, a condition precedent to a successful insistence upon the forfeiture, and the *Page 207 
plaintiff does not sue in this action to recover the premium, as we have shown. This objection to the plea of forfeiture is not well taken.
Nor do we think the last position taken by the plaintiff's counsel is tenable. It made no difference whether the plaintiff knew what was in the nonwaiver agreement or not. He signed it, and the law presumes he did know what was in it, and he will not be heard, in the absence of any proof of fraud or mistake, to say that he did not. Cuthbertson v. Ins.Co., 96 N.C. 480. "It will not do for a man to enter into an agreement and, when called upon to respond to its obligations, to say that he did not read it when he signed it or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor (244) must stand by the words of his contract, and if he will not read what he signs, he alone is responsible for his omissions." Upton v.Tribilcock, 91 U.S. 45. The evidence proposed to be introduced to show what passed between the plaintiff and the defendant's agent, Chisholm, at the time the nonwaiver agreement was signed, did not tend to show any waiver. At the time, Chisholm did not know of the mortgage, nor did the defendant. He discovered its existence when he was investigating the loss with a view of ascertaining the amount, and as soon as it was discovered he insisted that the policy was thereby avoided, and proceeded no further with the adjustment. What was said by Webb manifestly referred to the question of settling the amount of the loss, as he could not then have referred to the mortgage so as to have waived the forfeiture, for he was wholly ignorant of its existence. The court properly excluded all the evidence in regard to what occurred when the nonwaiver agreement was executed. We have carefully examined the entire case, and find
No error.
Cited: Modlin v. Ins. Co., 151 N.C. 41; McIntosh v. Ins. Co.,152 N.C. 53; Watson v. Ins. Co., 159 N.C. 640; Roper v. Ins. Co.,161 N.C. 155, 161; Cottingham v. Ins. Co., 168 N.C. 261. *Page 208 
(245)