S. A. PARAMORE v. THE FARMERS MUTUAL FIRE INSURANCE ASSOCIATION OF NORTH CAROLINA.

(Filed 31 October, 1934.)

1. **Insurance G c—Evidence of waiver of forfeiture for nonpayment of assessments held sufficient to be submitted to jury.**

   Evidence that defendant Mutual Fire Insurance Association sent plaintiff a notice of assessment on his policy which provided, under its charter and by-laws, that the policy would be forfeited unless the assessment were paid within sixty days, and that about six months thereafter defendant sent plaintiff notice of an additional assessment and included in such notice the past-due assessment, the second notice stating that if the total assessment were not paid within sixty days the policy would be forfeited, together with evidence that it was defendant's custom to mail notices of past-due assessments with current assessments and reinstate policies upon payment of the past-due and current assessments, and that within sixty days from receipt of the second notice plaintiff tendered payment of both his past-due assessment and his current assessment, and that he had suffered loss by fire within the sixty days after receipt of the second notice, *is held* sufficient to be submitted to the jury on the question of defendant's waiver of the forfeiture of the policy for nonpayment of the first assessment within the time prescribed, and as to whether the policy was in effect at the time of the fire.

2. **Customs and Usages A a—Testimony of plaintiff as to transaction with defendant held competent with other evidence of custom.**

   In this action on a fire insurance policy in a mutual insurance association, plaintiff introduced evidence of the custom of defendant to mail notices of past-due assessments with notices of current assessments and to

reinstate policies upon payment of past-due and current assessments. Plaintiff testified to the effect that after the assessment against him was past due he went to defendant's secretary-treasurer to pay same and was told not to do so at that time, that the matter of reinstatement would be taken up at a meeting of defendant's directors, and that thereafter plaintiff sent him notice of the past-due assessment with notice of a current assessment, which notice stated that the policy would be forfeited if the total assessment were not paid within sixty days: *Held*, plaintiff's testimony was competent with the other evidence of custom.

**3. Insurance G c—**

    C. S., 6351 and 6352, held not applicable to facts in this case, in which plaintiff seeks to establish a waiver of the forfeiture of his policy of fire insurance for nonpayment of an assessment within the time limit prescribed.

APPEAL by defendant from *Daniels, J.*, and a jury, at May Term, 1934, of PITT. No error.

This is an action brought by plaintiff against defendant to recover the sum of $1,500 for the loss of his residence by fire, under the terms of a policy issued to him by defendant. The defendant denied liability and contended that the policy of insurance lapsed and became void on 15 March, 1933, by reason of the failure of the plaintiff to pay his assessment on 16 January, 1933, or within sixty days thereafter, as provided by the charter and by-laws of the defendant corporation.

The plaintiff replied to the defendant's contention as follows: "That the policy of fire insurance sued on herein, on the date of the fire, to wit, 10 October, 1933, was in full force and effect and fully subsisting, and the validity thereof was fully recognized by the defendant, for that, on 20 September, 1933, the defendant mailed to the plaintiff at his post-office address in Grimesland, North Carolina, a postal card in the following words and figures, to wit: 'S. A. Paramore, Grimesland, N. C., Office of The Hood System Industrial Bank, Greenville, N. C., September 15, 1933. Dear Sir: Your pro-rata part of an assessment to cover Reserve Fund and losses sustained by J. H. and F. L. Blount ($100), J. G. Moye ($100), Calvin Dunn ($250), J. E. Sutton ($150), Mrs. Lizzie Dail ($350), J. C. Galloway ($125), Mrs. Pearl Roberson ($750), J. F. Cox ($300), M. O. Gardner ($75), Heber F. Cox ($375), Mrs. G. L. Moore ($300), and A. M. Wooten, Jr. ($500), amount to $9.50 (Previous Assessment $9.50), Total $19.00.

" 'The above assessment is due within sixty days from date, and if not paid at maturity your policy will be forfeited. Farmers Mutual Fire Insurance Association, James L. Little, Secretary-Treasurer. Present this card at Hood Bank.'

"That the above-mentioned postal card, advising the plaintiff of assessment due and owing by him, was mailed by the defendant at

Greenville, North Carolina, at 3 p.m. on 20 September, 1933, and thereafter, in due course, was received by the plaintiff.

"That the aforesaid notice of assessments due and owing by the plaintiff included all assessments theretofore made by the defendant against the plaintiff, then unpaid, and in addition thereto included a further assessment of $9.50, and according to said notice, as appears above, the plaintiff had sixty days from 15 September, 1933, in which to pay the total assessment of $19.00.

"That thereafter, to wit, on 11 October, 1933, and within the sixty days provided for in said notice, the plaintiff tendered to the defendant, in cash, lawful money of the United States, the sum of $19.00, for the purpose of paying said assessment, which tender the defendant wrongfully and unlawfully refused.

"That, as aforesaid, the defendant, in its notice of assessment made on 15 September, 1933, included the assessment theretofore due and owing by the plaintiff, in addition to an assessment then being made and by reason of the inclusion of said old assessment in said notice and the levying of another assessment against the plaintiff, the defendant waived its right to declare the policy sued on herein lapsed, and recognized that said policy was then in full force and effect.

"That the defendant, prior to the levying of the assessment, notice of which is contained on the postal card fully above set out, usually and habitually followed and practiced the custom, habit and usage not to declare one of its policies lapsed for the nonpayment of assessments, which said custom had been so habitually practiced that the provision for payment within sixty days, or a consequent lapsing of the policy by reason of such nonpayment, had fallen into disuse and was not enforced by the defendant, which said custom and practice and usage were well known to the plaintiff and numerous others of the defendant's policyholders.

"That being so advised, the plaintiff alleges and says that both by reason of defendant's custom with respect to the levying and collection of assessments as above set forth, and by reason of the particular notice of assessment made by the defendant on 15 September, 1933, the defendant waived its right to declare a forfeiture of plaintiff's policy, and on account thereof, at the time of the fire complained of in the complaint, plaintiff's policy was in full force and effect and fully subsisting and on account thereof the plaintiff is entitled to recover the amount demanded in the complaint."

The following issue was submitted to the jury, and their answer thereto: "Was the policy of fire insurance in controversy herein in full force and effect on 10 October, 1933, the date of the fire complained of, as alleged in the complaint? A. 'Yes.'"

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*W. L. Whedbee and Albion Dunn for plaintiff.*
*Harding & Lee for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendant made motions for judgment as in case of nonsuit. The court below overruled these motions, and in this we can see no error.

The question involved: Did the defendant, under the facts appearing of record, waive the forfeiture of the policy for nonpayment of the January, 1933, assessment, and was the policy of fire insurance in full force and effect on the date of the fire on 10 October, 1933? We think so, under the facts and circumstances of this case.

In Vol. 2, Couch Cyc. of Insurance Law, part of section 533, page 1631, is the following: "It has been intimated that, in order to revive a policy which is absolutely forfeited, there must be a new contract, founded upon a valuable consideration, or such conduct by the company or its authorized agent as misleads the insurer to his prejudice, and operates as an estoppel; but the better rule seems to be that, if an agent's authority is such that he may issue policies and make contracts of insurance, or if he has apparent authority to act in the premises, and the insured has no knowledge, actual or constructive, of any conflicting limitations of authority, the agent necessarily has, as such, the right to revive lapsed or voided policies, provided the original contract at its inception was neither illegal nor against public policy. And in so far as an insurance agent has power to waive a forfeiture of the policy, he has authority to revive it, inasmuch as a waiver of forfeiture operates as a revival. This, it is held, may arise from the agent giving a renewal receipt with knowledge of the facts from which a forfeiture may arise, or by receipt of the premium, or by some other unequivocal act sufficient to effect a waiver of forfeiture."

In *Moore v. Accident Assurance Corp.,* 173 N. C., 532 (536-537), citing numerous authorities, we find: "It was not merely a courtesy or favor extended to the insured, as in *Hay v. Assn.,* 143 N. C., 257. A casual indulgence would not be sufficient to show a waiver, as decided in that case, and so the judge charged the jury, but he left it to them to find whether there had been such 'a long-continued course of dealings' on the part of the defendant as showed that it did not intend to rely upon the delay in payment, but that it extended credit to the insured for

the brief space of time.   It was said in *Painter v. Industrial Life Assn.,* 131 Ind., 68, approving and quoting from *Sweetser v. Odd Fellows Assn.,* 117 Ind., 97: 'It is abundantly settled that an insurance company will be estopped to insist upon a forfeiture if by any agreement, either express or implied by the course of its conduct, it leads the insured honestly to believe that the premiums or assessment will be received after the appointed day.   The decisions which hold and enforce this view are very numerous.' "   *Grubbs v. Insurance Co.,* 108 N. C., 472; *Perry v. Ins. Co.,* 132 N. C., 283; *Murphy v. Ins. Co.,* 167 N. C., 334; *Sellers v. Insurance Co.,* 205 N. C., 355.

In *Penland v. Ingle,* 138 N. C., 456 (457), to establish a custom, the law is thus stated: "The character and description of evidence admissible for establishing the custom is the fact of a general usage and practice prevailing in the particular trade or business, and not the opinions of witnesses as to the fairness or reasonableness of it."   *Crown Co. v. Jones,* 196 N. C., 208.

The evidence on the part of the plaintiff fully sustained plaintiff's allegations of waiver in his reply.   There was abundant evidence of a custom by numerous witnesses.   In fact, the testimony of J. L. Little, which is in part as follows, tends to sustain plaintiff's contentions:   "I have been secretary and treasurer for thirty-eight years, and during that time have collected assessments levied from time to time, and assessments have been paid to me as treasurer.   The help referred to that I thought I might be able to give Mr. Paramore was that I could let him be reinstated by paying the lapsed assessments and waiving the September assessment.   *It has been a custom with me for a long time to mail notices of a second assessment when a former assessment had not been paid and I have collected a good many and reinstated a good many members by sending them notices of new assessments calling their attention to their failure to pay the old assessment.*"   (Italics ours.)

The plaintiff testified: "I went to see Mr. Little because I got to studying about my insurance on my house, and I didn't really know whether I owed for it or not.   I know they usually send out assessments the first of the year, but I didn't remember whether I got a card or not. I went in to talk it over with Mr. Little, and when I did he told me he was going to call a meeting within a few days, the first of September, and he was going to make a motion to cancel out the premiums that was not over one behind and let them start with the new assessment of September, and he asked me didn't I think that would give the members some encouragement.   The motion to cancel out the assessment was for everybody who was not more than one premium behind.

"Q. In going to see Mr. Little at that time, was it your purpose to pay up your assessment, if you owed any?

"A. Yes, sir. I did not receive any notice of any meeting that was had after this conversation. I received this card through the mail (card exhibited to him). I received it on or about 21 September. The fire that destroyed my house occurred on 10 October, 1933. After I received this notice I went to see Mr. Little. I went to see him the next day after the fire.

"Q. What was your conversation with Mr. Little at that time?

"A. I went in and told him I wanted to straighten out my insurance and he said all right. He was at the front part and he got up and we went on in the back, and as we were going on back there together I told him that I was sorry to tell him, but I had a fire last night, so he went on and got his books like everything was all right and he looked on there, and I took the money out of my pocket and counted it. I took out $19.00 and laid it out there and he acted like he was going to take it, then he told me he couldn't take it. I asked him why, and he said if he took the money the company would have to pay out money. I said let me pay and then you pay me, and he said no, I can't do that. He said that if I had not had the fire they would be glad to take it, and that he always wants to take in money, so he handed me the $19.00 back.

"Q. Mr. Paramore, in your experience as a policyholder in this company, what, if anything, do you know of the practice and custom of the company to take assessments from its policyholders after sixty days from the notice of the assessment?

"A. Well, as far as my knowledge, they took the money. As far as I have ever had the experience they always took the money when they can get it. I know of an instance when they took money or assessments after the sixty days had expired. My brother, Tom, paid one assessment after the sixty days had expired after the notice." . . . "Mr. Little told me not to pay the January assessment and to wait until September."

The letter of 15 September, 1933, recites: "Previous assessment $9.50. Total $19.00. The above assessment is due within sixty days from date and if not paid at maturity your policy will be forfeited."

The fire occurred within the sixty days, on 10 October, 1933. Within the sixty days the plaintiff tendered the $19.00. The testimony of plaintiff as above set forth was excepted to, and assignments of error duly made. We think the evidence competent with the other evidence of custom.

We think the court below, in its charge, taking the evidence of all the witnesses as to custom, more liberal to defendant than it was entitled to. *Crown Company v. Jones, supra.* The court below charged the jury: "And then you heard the defendant explain about the other losses, there were two others, I believe, I think that is not sufficient, that evidence is not sufficient to establish a custom or a general course of action, taking only three instances, and with the explanation that had been

made. But the course of dealing that they received assessments by more than sixty days after they were due may be considered by the jury in connection with the testimony of the plaintiff. That in August, before the fire, he went to the office of Mr. Little, the secretary and treasurer, to see how his insurance stood and got information that he had not paid the assessment of January preceding, and that he offered to pay that, and thereupon Mr. Little told him if he was in his place he would not pay it then, and stated that he, Mr. Little, would have a meeting about the first of September of the directors and make a suggestion to them to refinance policyholders on past-due assessments, if only one was past due, and considered together with the mailing of the postal card, which the plaintiff received about 20 September, and which I have just read you from the replication, consider all this upon the question as to whether its association waived the forfeiture for failure to pay assessment January, 1933."

We do not think that C. S., 6351 and 6352, cited by defendant, applicable to the facts in the case. The exceptions and assignments of error made by defendants cannot be sustained.

On the whole record, we find no prejudicial or reversible error.

No error.