### EAST CAROLINA RAILWAY COMPANY v. MARYLAND CASUALTY COMPANY.

(Filed 2 October, 1907).

**Insurance—Contracts—Interpretation.**

> While in a contract of insurance reasonably susceptible of two constructions the construction most favorable to the insured will be adopted, the Court, in the absence of any equitable principle, must take the contract as it finds it, and so construe it as to preserve the intent of the parties, when clearly expressed, so that their rights can with certainty be ascertained from the language used. When, under a contract, the plaintiff was to be indemnified by defendant from loss occasioned to one of its servants by the negligent act of a fellow-servant on the pay roll of the plaintiff, or within the list of estimated wages, there can be no recovery when such fellow-servant is not shown to be within the terms of the said description.

CIVIL ACTION, tried before *Biggs, J.,* and a jury, at April Term, 1907, of the Superior Court of EDGECOMBE County.

This action was brought by the plaintiff to recover $1,999, alleged to be due on a contract to indemnify it against liability to its employees, which was the amount theretofore adjudged to one J. G. Andrews, an employee of the plaintiff, on account of injuries received by the negligence of Henry

Clark Bridgers, another of its employees, in a suit brought by him against the plaintiff. The policy of the defendant indemnifies "against loss from common-law or statutory liability; for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy by any employee or employees of the assured, while on duty at the places and in the occupations mentioned in this application, in and during the continuance of the work described in this application." But the liability is limited by the following clause: "This policy does not cover loss for liability for injuries, as aforesaid, to or caused by any person unless his wages are included in the estimated wages named in the schedule and he is on duty at the time of the accident, in an occupation hereinafter described, at the place or places mentioned in the schedule." It appears that Andrews' compensation as an employee of the plaintiff was included in the estimated wages named in the schedule, which is a part of the policy, while Bridgers' was not so included.

Issues were submitted to the jury and answered, by consent, as follows: "1. Was J. G. Andrews, at the time of the injuries for which he obtained the judgment in controversy, an employee of the plaintiff, and was he on the pay roll and his wages included in the estimated wages named in the schedule?" "Yes." "2. Were the injuries to J. G. Andrews for which the judgment was obtained caused by an employee of the plaintiff, and if so, who?" "Yes; Henry Clark Bridgers, who was at the time running as engineman, and who held the office of president and general manager." "3. Were the wages of such employee included in the estimated wages named in the schedule?" "No." The Court, upon the verdict, was of the opinion that the defendant was not liable to the plaintiff upon the contract, and so adjudged. The plaintiff thereupon appealed.

*John L. Bridgers* for plaintiff.
*Jacob Battle* for defendant.

WALKER, J., after stating the case: The policy upon which this suit was brought is most clearly restricted to cases where the injury results to an employee of the insured from the negligence of some other employee, whose wages were on the pay roll of the company and included or considered in the estimate upon which the premium was computed. Parties who are *sui juris* must be permitted to make contracts for themselves, and the Court, in the absence of any equitable element invoking its protection in favor of one or the other of the parties, must take the contract as it finds it and so construe it. It is true that, in passing upon contracts of insurance or indemnity like the one now in hand, the courts have adopted certain canons of interpretation, one of which is, that the contract will be liberally construed in favor of the assured, so as not to defeat, without a clear necessity, his claim for indemnity. When doubt arises by reason of the language employed to express the agreement, so that it admits of two interpretations, the courts, as a general rule, adopt that one which, without any violence to the words selected by the parties, will sanction the claim and cover the loss. *Goodwin v. Assurance Society,* 97 Iowa, 226; *Kendrick v. Insurance Co.,* 124 N. C., 315. The leading idea which controls in such cases was well stated by *Judge Douglas* in *Grabbs v. Insurance Co.,* 125 N. C., 399: "The extraordinary development of insurance, and its necessary adaptation to the varying and complicated business relations of a progressive age, tax the utmost ability of the courts. But, while different conditions may require the application of different rules, one great principle must always be kept in view, and that is, the ultimate object of all insurance. While we should protect the companies against all unjust claims and enforce all reasonable regulations necessary for their protection, we must not forget that the primary object of all insurance *is to insure.* We cannot permit insurance companies, by unreasonable stipulations, to evade the payment of such indemnity when

justly due, and thus defeat the very object of their existence."
And so in *Bank v. Fidelity and Deposit Co.*, 128 N. C., 371,
the same learned Judge tersely restated the rule: "The ob-
ject of an indemnifying bond is to indemnify; and if it fails
to do this, either directly or indirectly, it fails to accomplish
its primary purpose and becomes worse than useless.   It is
worthless as an actual security, and misleading as a pretended
one."   The Supreme Court of the United States is equally
explicit: "If, looking at its provisions, the bond is fairly and
reasonably susceptible of two constructions—one favorable to
the bank and the other favorable to the surety company—the
former, if consistent with the objects for which the bond was
given, must be adopted, and this for the reason that the in-
strument which the Court is invited to interpret was drawn
by the attorneys, officers or agents of the surety company.
This is a well-established rule in the law of insurance."
*Am. and Surety Co. v. Pauly,* 170 U. S., 144.   In *Bray v.
Insurance Co.,* 139 N. C., 393, in considering the same prin-
ciple of construction, where the meaning of any provision or
of the entire policy is uncertain, we held that the interpreta-
tion should be such as to favor the plaintiff, or party insured
or indemnified, assigning as one all-sufficient reason for this
view of the matter, "that the company has had the time and
the opportunity, with a view to its own interest, to make
clear its meaning by selecting with care and precision lan-
guage fit to convey it, and if it has failed to do so, the con-
sequences of failure should *not even be shared by the assured,*
so as to deprive him of the benefit of the contract as one of
indemnity for his loss."   Probably the most important gen-
eral rule guiding courts in the construction of insurance poli-
cies is, that all doubt or uncertainty as to the meaning of the
contract shall be resolved in favor of the insured.   Vance on
Insurance, p. 592.   The latter author also says: "This rule,
it is well settled, applies in full force to those contracts of
special insurance which, unfortunately for both insurers and

insured, are often filled with numerous conditions, the legal significance and economic purpose of which are alike uncertain." *Jones v. Casualty Co.,* 140 N. C., 264; *Bank v. Insurance Co.,* 5 Otto, 673; *Lumber Co. v. Fidelity and Casualty Co.,* 30 L. R. A., 691; *Fenton v. Fidelity and Casualty Co.,* 48 L. R. A., 770. This Court has distinctly declared that, if a contract of insurance is reasonably susceptible of two constructions, the uniform rule in all courts is to adopt that which is most favorable to the insured. *Rayburn v. Casualty Co.,* 138 N. C., 382; *Bank v. Insurance Co.,* 95 U. S., 673; *Jones v. Casualty Co.,* 140 N. C., 265. But, while this salutary rule is well established, it is never enforced except in those cases to which it is strictly applicable and which come within its reason and purpose; and while we generally favor the insured when the company, by the language of its own selection, has created a doubt as to what was meant, the rule will never be carried so far as to make a contract for the parties different from what they have made for themselves, and it is not applicable when the intent of the parties has been clearly expressed and their rights can with certainty be ascertained from the language as used. *Bray v. Insurance Co.,* 139 N. C., 393; *Durand v. Insurance Co.,* 63 Vt., 437 (25 Am. St. Rep., 773); Vance on Insurance, p. 593. In this case it is perfectly clear what the parties meant. Indeed, there cannot well be two opinions about it. They have plainly contracted that the plaintiff should not be indemnified for any loss arising to one of its servants who is injured and who is either not on the pay roll or within the list of estimated wages, or who was injured by a fellow-servant not within the same category. If the employee injured is not on the pay roll, or if the employee who injured him by his negligence is not, there is no liability. The exception is inclusive of both classes of servants, although expressed alternatively, or, as counsel said, disjunctively. Stated differently, the plaintiff, in order to recover, must have shown that both of the servants,

the injurer and the injured, were on the pay roll and not within the descriptive words of the exception from liability. This is not an unreasonable view of the matter, as the basis of calculating the premium to be paid is just this very stipulation and requirement. If we should hold the plaintiff entitled to recover, he would clearly receive a benefit and indemnity for which he had never paid the defendant; and when it asserts the defendant's liability to it, the latter may well reply *non haec in federa veni.*

The able and learned brief of *Judge Battle* is conclusive upon the question, and we do not hesitate to follow it, although confronted by a very able and ingenious one by Mr. Bridgers.

We do not understand why plaintiffs sue generally for $1,999, when a sum demanded not exceeding $2,000, exclusive of interest and costs, takes the case out of the jurisdiction of the Federal courts. 4 Anno. Fed. Statutes, pp. 265 and 312; *Coffin v. Railroad,* 118 Fed. Rep., 688.

The judgment of the Court upon the verdict was correct, and we affirm it.

Affirmed.