C. E. ROPER ET ALS. v. NATIONAL FIRE INSURANCE COMPANY, THE DIXIE FIRE INSURANCE COMPANY, AND THE PETERSBURG SAVINGS AND INSURANCE COMPANY.

(Filed 4 December, 1912.)

1. Insurance, Fire—Standard Form—Change of Title—Possession— Forfeiture—Interpretation of Statutes.

A deed of assignment conveying all the property of insured, made after policies of fire insurance had been issued on the property, and which empowered the trustee to sell and execute deeds in fee and apply the proceeds in payment of insured's debts, comes within the forfeiture clauses of the standard fire insurance policies prescribed by, our statute, Revisal, sec. 4762 *et seq.*, and invalidates the policy, not being an unconditional and sole ownership of the property insured; the subject of insurance being a building on ground not owned by the insured in fee simple, and a prohibited change in the title or possession of the subject of the insurance.

2. Same—Personal Property.

A deed of assignment subsequently made to the issuance of a policy of fire insurance, including personal property of the insured covered by the policy, is a violation of the sixth clause of the standard or statutory form of policy, being such an encumbrance as is contemplated by the statute, and invalidates the policy.

3. Same—Concurrent Insurance.

A deed of assignment for general creditors conveying property embraced in an insurance policy divests the title of the insured therein, and avoids the policy under the statutory forfeiture

clauses requiring that the interest of the insured be truly stated in the policy, and that the insured shall not after the issuance of the policy "procure any other insurance, whether valid or not, on property covered in whole or in part by" the policy.

### 4. Same—Misrepresentations.

When under a fire insurance policy the insured has violated the provisions of the policy by placing more concurrent insurance on the property than the policy permits, the policy is invalidated, in accordance with the statutory form, as a concealment or misrepresentation "in writing, or otherwise, of any material fact or circumstance concerning (the) insurance or the subject thereof."

### 5. Insurance, Fire—Principal and Agent—Waiver.

An agent of a fire insurance company, whether general or local, cannot waive the requirements of a standard policy except in the manner and form prescribed by the statute.

### 6. Same—Adverse Interests—Imputed Knowledge.

A trust company having acted as the agent of certain fire insurance companies, subsequently was made the trustee in a deed of general assignment for the benefit of insured's creditors, of which it was one, which conveyed all the property of the insured covered by his policies, and the policies were continued in force by the trust companies without the knowledge or acquiescence of the insurance companies : *Held*, the acts of the trustee as agent for the companies could not be considered as binding upon the latter, or as done with their knowledge, for the interest of the agent was antagonistic to that of the companies, and could not be considered as a waiver by the companies of their rights under the policy contract.

### 7. Appeal and Error—Consolidated Cases—Service.

When it appears of record that several cases on appeal to the Supreme Court were consolidated by consent and duly served in that form, and the parties made common cause in its prosecution, a motion to dismiss and affirm the judgment below made by one of the appellees on the ground that appellant had not served the case on him, individually, or on his counsel, will be denied.

### 8. Insurance—Policies—Special Clauses—"Mortgages"—Involuntary Bankrupts—Forfeitures.

A provision in a rider attached to a policy of fire insurance, to the effect that the right of a mortgagee shall not be affected by any acts or negligence on the part of the insured, differs from an ordinary "loss payable" clause; and where the interest

of the mortgagee is insured under such a policy, and the mortgagor, has made a conveyance which would avoid the policy as to him, and the mortgagee is a bankrupt, and has assigned the note and mortgage to his trustee in bankruptcy, who thus held them at the time of loss by fire, the adjudication in bankruptcy, when involuntary, does not avoid the policy as to the interests of the mortgagee.

**9. Insurance, Fire—Policies—Special Clauses—"Mortgagees"—Material Men—Liens—Forfeitures.**

Material men who have not perfected their lien on a building covered by a policy of insurance, and which was destroyed by fire, have no insurable interest, but only an inchoate right, and cannot recover under the New York and New Jersey standard mortgage clause, providing, "Loss or damage, if any, under this policy shall be payable" to the insured or mortgagees (trustees), as interest may appear.

**10. Same.**

The New York or standard mortgage clause in a fire insurance policy does not include a lien upon the insured building of one furnishing material in its construction, and their interests are lost when the insured forfeits his rights under the policy.

**11. Insurance, Fire — Policies — Standard Forms—Forfeit—Uses—Rights of Mortgagee—Personal Property—Knowledge.**

When the assured has forfeited his right to recover damages under his fire insurance policy, containing only the usual "loss payable" clause, the rights of his mortgagee, recognized in the policy, are not superior to his, and must fall within the forfeiture clause of the contract; especially does this apply to personal property contained in the mortgage of which the company was unaware until after the fire, causing the damage, had occurred.

APPEAL by plaintiffs and defendants from *Justice, J.,* at July Special Term, 1912, of HENDERSON.

The above entitled three civil actions were consolidated by consent, and tried together at July Special Term of the Superior Court of Henderson County, *Justice, J.,* presiding. The actions were brought to recover for loss by fire upon policies of insurance issued by each of the above defendants, viz.: The National, 20 May, 1910, $5,000; The Dixie, 12 October, 1910, $3,000; and the Petersburg, 14 January, 1911, $3,000.

From the judgment rendered, the plaintiff Roper and each of the defendants appealed.

*J. H. Merrimon, Smith, Shipman & Justice for plaintiff.*
*H. G. Ewart for G. H. Valentine, F. S. Spruill, A. L. Brooks,*
*Michael Schenck for defendants.*

PLAINTIFF'S APPEAL.

BROWN, J. The court below ruled that upon the entire evidence plaintiff was not entitled to recover of either of the defendants.

The three contracts are the standard policies established by the act of 1899, Revisal, secs. 4762, 4833. Each contains the following forfeiture clauses:

(1) This entire policy shall be void if the insured has concealed or misrepresented in writing, or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; (2) or if the interest of the insured in the property be not truly stated herein; (3) this entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has or shall hereafter make or procure any contract of insurance, whether valid or not, on property covered in whole or in part by this policy; (4) or if the interest of the insured be other than unconditional and sole ownership; (5) or if the subject of insurance be a building on ground not owned by the insured in fee simple; (6) or if the subject of insurance be personal property, and be or become encumbered by a chattel mortgage; (7) or if any change, other than by the death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupancy without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise.

The entire evidence shows that at the time of the loss the plaintiff had violated all of the above provisions of the policies, three of which, the fourth, fifth, and seventh, apply alike to all three policies.

On 15 October, 1910, after policies of the National and Dixie had been issued, the plaintiff Roper, individually and as executor of F. A. Roper, executed a deed of assignment, irrevocable, conveying all of the property insured to the plaintiff the Wanteska Trust and Banking Company to secure creditors, of which

the trustee was one, and empowering the trustee to sell and execute deeds in fee and apply the proceeds in payment of debts.

That this avoids the policies is too well settled to need discussion. *Sossaman v. Insurance Co.,* 78 N. C., 147; *Biggs v. Insurance Co.,* 88 N. C., 143; *Hayes v. Insurance Co.,* 132 N. C., 702; *Weddington v. Insurance Co.,* 141 N. C., 234; *Modlin v. Insurance Co.,* 151 N. C., 41; *Watson v. Insurance Co.,* 159 N. C., 638.

The Dixie policy, 12 October, 1910, insured the hotel building for $1,000 and the furniture for $2,000. The plaintiff Roper, on 6 May, 1910, executed a deed in trust to W. A. Smith for J. M. Stepp, conveying the furniture. This was also a violation of the sixth clause of the policy hereinbefore set out, viz.: "If the subject of insurance be personal property and be or become encumbered by a chattel mortgage." *Weddington v. Insurance Co., supra.*

As to the Petersburg policy, the undisputed facts are that at the date thereof, 14 January, 1911, the plaintiff Roper was not the owner of said property, and had no title thereto. Both he and the Wanteska Company knew that Roper had irrevocably assigned the property in fee to pay creditors, among whom was the Wanteska Company. This was a clear forfeiture under the second clause, to wit, "if the interest of the insured be not truly stated herein."

This policy, as well as the National, was also forfeited for violation of the concurrent insurance provision, viz.: "If the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

By reference to the Petersburg policy, it will be seen that only $8,000 concurrent insurance was allowed, whereas at the time of the fire there was $11,000 of insurance in effect.

This contract of insurance is further invalidated on account of the matters hereinbefore set out under specification one, as avoiding the policy, to wit: "If the insured has concealed or misrepresented in writing, or otherwise, any material fact or circumstance concerning this insurance or the subject thereof."

As will appear from the Petersburg policy, the amount of concurrent insurance was concealed, as this was the last policy written. The amount of the total encumbrances upon the property was concealed, and, finally, the fact that the insured had no interest or title in the property, and that possession of same had been delivered to the Wanteska Trust and Banking Company, was concealed from the company.

Any one of the above specified acts is sufficient to prevent a recovery upon this contract.

To avoid the consequences of these acts, it is contended that there was a waiver of the forfeiture clauses of the policies, as they were issued by the Wanteska Trust Company, the agent of each of these defendants, and that the knowledge of their agent, although undisclosed to the defendants, will be imputed to them. It is admitted that the defendants had no other notice.

In our view, this position cannot be sustained, as there is no written waiver written upon or attached to the policy as required by the statute.

In the well-considered opinion of this Court by *Mr. Justice Connor* in *Black v. Insurance Co.,* 148 N. C., 169, it is held that, "The condition expressed in the statutory form of a fire insurance policy that 'no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, etc., unless such waiver, if any, shall be written upon or attached hereto,' does not restrict the power of such officer, etc., to waive such condition, but establishes an invariable rule of evidence as to such waiver and renders parol evidence thereof inadmissible."

That this applies to general agents, with power to bind the company (as defined in *Grubbs v. Insurance Co.,* 108 N. C., 472), is expressly held in the *Black case,* for the opinion assumes that the agent who issued Black's policy was a *general* agent (page 172).

To the same effect is *Quinlan v. Insurance Co.,* 133 N. Y., 356, in which it is held that it is immaterial whether the agent is a general or a special one, for the power of one may be limited as well as the other.

In our case the limitation is fixed by law and not by the parties. It is prescribed by statute, and cannot be waived except in manner and form as therein prescribed. 13 Am. and Eng., 223. A wealth of authority is cited in the *Black case,* and we can add nothing to what is there so well said.

The Wanteska Company is a plaintiff in this action, and its interests have been, and are now, adverse to its principals. When it accepted the assignment of the property to secure its own and other debts, it was not acting for the defendants and not within the scope of its agency.

The rule that notice to an agent is notice to the principal, being based upon the presumption that the agent will transmit his knowledge to his principal, the rule fails when the circumstances are such as to raise a clear presumption that the agent will not perform this duty; and accordingly, where the agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal is not charged with the knowledge of the agent acquired therein. 31 Cyc., p. 1595, and cases cited.

It was against the interest of the Wanteska Company to disclose these transactions to the defendants, as they would have canceled the policies at once.

This principle of imputed knowledge does not apply when it would be against the interest of the agent to make the disclosure. *Stanford v. Grocery Co.,* 143 N. C., 420; *Bank v. Burgwyn,* 110 N. C., 267; *Brite v. Penny,* 157 N. C., 114.

As was said in *Barnes v. Trenton Gas Light Co.,* 27 N. J. Eq., 33, "His interest is opposed to that of the corporation, and the presumption is not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it."

In the three cases consolidated the judgment of the Superior Court upon the plaintiffs' appeal is affirmed. The plaintiffs will be taxed with the costs.

Affirmed.

The motion of plaintiff G. H. Valentine, trustee of Stepp, to dismiss the appeal and affirm the judgment as to him on the

ground that the case on appeal was not served on him individually or on his counsel, H. G. Ewart, is denied.

The record shows that the cases were consolidated by consent and that the plaintiffs and all the counsel made common cause in the prosecution. The case on appeal was duly served and made up.

Motion denied.

### DEFENDANTS' APPEAL IN THE ABOVE CONSOLIDATED ACTIONS.

BROWN, J. As we have held on the plaintiffs' appeal, the court below correctly held that C. E. Roper, the insured, cannot recover of either of the defendants. The court, however, adjudged that plaintiff G. H. Valentine, trustee in bankruptcy for J. M. Stepp, mortgagee named in the National policy, recover of said company $3,200, the mortgage indebtedness, and be subrogated to the rights of the mortgagee; that the plaintiff A. L. Holmes, contract creditor named in the policy, recover of the Dixie Company, $1,000; that plaintiffs Clarke Hardware Company and Rigby-Morrow Company, material lienors, recover of the Petersburg Insurance Company, $2,407.

The defendants by proper exceptions and several prayers for instructions, which were refused, bring before us for review the correctness of such judgments.

### THE NATIONAL POLICY.

This covered $5,000 on the building and contained what is called a New York and New Jersey standard mortgage clause attached as a rider to the policy, the effect of which is to provide that the right of the mortgagee Stepp shall not be affected by any acts or negligence on the part of Roper, the insured.

It insures the interest of the mortgagee Stepp, and in that respect differs materially from an ordinary "loss payable" clause. The premiums having been paid, it is therefore incumbent on the defendant company to show some act of the mortgagee which avoids the policy as to him.

The proof shows that Stepp was adjudicated a bankrupt on 31 March, 1911, and plaintiff Valentine was appointed trustee

in bankruptcy, and the note and mortgage on the property, afterwards burned, were duly assigned to him, and that he held them at the time of the fire.

Concerning the duty of a mortgagee under this clause, Mr. Ostrander says: "The interest of the mortgagee is so far recognized in particular cases that, besides being named as the payee, there is attached to the policy a special stipulation for his better protection. This stipulation is to the effect that the policy shall not be invalidated as to the mortgagee's interest because of any act or neglect of the mortgagor. For this surrender by the insurer of important contract rights expressed in the policy which are either annulled or qualified by the stipulation, the mortgagee promises to give notice of any change in the ownership of his property or increase of hazard which comes to his knowledge."

We are of opinion that the adjudication in bankruptcy, being an involuntary act upon the part of Stepp, did not avoid this policy. There is respectable authority to be found to the contrary, but this Court has held in *Pants Co. v. Insurance Co.,* 159 N. C., 78, that the appointment of a receiver for the property of a corporation is not ground for forfeiting a policy of insurance on the property of the corporation. In the opinion in that case the authorities are cited, and we regard it as analogous to the case of the National policy.

In this appeal by the National Fire Insurance Company of Hartford we think the assignee Valentine is entitled to recover, and the judgment of the Superior Court upon this policy is affirmed.

Let the defendant National Fire Insurance Company of Hartford pay the costs of appeal in this particular case.

### THE PETERSBURG POLICY.

To this policy was attached a New York and New Jersey standard mortgage clause, declaring the "loss or damage, if any, under this policy shall be payable to Clarke Hardware Company and Rigby-Morrow Company as mortgagees (or trustees), as interest may appear."

The parties named in this mortgage clause as holding mortgages or deeds of trust, instead of holding mortgages or deeds of trust as represented, *were at the time creditors of the plaintiff C. E. Roper for materials furnished for the building which was subsequently burned.* On 14 January, 1911, the date of the issue of the policy, these creditors had only an inchoate right of lien for materials furnished; that is to say, they had not filed their liens, nor did they file them until nearly two months later, to wit, 16 March, 1911.

The contract of insurance being void as to Roper, the plaintiffs Hardware Company and Rigby-Morrow Company cannot recover under the mortgage clause, for at the date the policy was issued they held no mortgage or other insurable interest on the property and cannot bring themselves within the terms of the policy. They were then only simple contract creditors with an inchoate right to file a lien, which was not done until two months after the policy was issued.

The plaintiffs were not either mortgagees, trustees, or lienors when the policy was issued. Revisal, secs. 2026-2029; *Clarke v. Edwards,* 119 N. C., 120; *Lumber Co. v. Hotel Co.,* 109 N. C., 661. A mortgage has priority over a lien for materials furnished. *Cox v. Lighting Co.,* 152 N. C., 164.

Yet another reason why the language, "mortgagee or trustee," cannot be held to embrace lienors claiming under material liens is that, as against a mortgage or deed of trust, the grantor has no right of homestead, whereas as against material liens the debtor is entitled to his homestead. *Broyhill v. Gaither,* 119 N. C., 443; *Cumming v. Bloodworth,* 87 N. C., 83; *Cheeseborough v. Sanatorium,* 134 N. C., 245.

At the date of the issue of the policy the Clarke Hardware Company and the Rigby-Morrow Company held no insurable interest in the property, and that is essential in order to take benefit under the New York and New Jersey standard mortgage clause. These plaintiffs could only claim as ordinary creditors under an ordinary loss payable clause. Their claim under that was forfeited by the act of Roper, the insured, as we will later show.

For these reasons we are of opinion that his Honor erred in rendering judgment in favor of the said plaintiffs, and that they are not entitled to recover.

### THE DIXIE POLICY.

This policy was issued 12 October, 1910, and the deed of assignment by Roper to that company was made 15 October, 1910. This policy covers $1,000 on the building and $2,000 on furniture, and contains a simple loss payable clause (not a standard mortgage clause) in favor of plaintiff Holmes, who held a deed in trust on the real property insured for $3,300.

This is the only mortgage indebtedness referred to in the Dixie policy, and of the existence of this and of the other three mortgages and deeds of trust, two of which were executed to the Wanteska Trust and Banking Company, the defendant had no knowledge until after the fire. No indorsement in writing was made and no word of notice given.

The court, holding the policy in the Dixie Fire Insurance Company void as between Roper, the assured, and the company, held that A. L. Holmes, named in the contract of insurance as a contract creditor, with only a loss payable clause, was entitled to recover judgment of the defendant to the extent of $1,000, the amount of the policy written upon the building, in like manner as if there had been in the policy a New York and New Jersey standard mortgage clause.

His Honor properly held that Holmes could not recover any part of the insurance upon the furniture under the loss payable clause, as he held no mortgage, and Roper, the insured, had forfeited the policy by his own act under the authority of *Weddington v. Insurance Co.,* 141 N. C., 235.

This leaves to be considered the question of the validity of the $1,000 covered by this policy on the hotel property. The court held that the policy was void as to the insured Roper. Can A. L. Holmes, the mortgagee to whom the policy was made payable as his interest should appear, recover upon this contract independent of the right of the insured, Roper?

It will be observed that this rider is not what is known as the New York and New Jersey standard form, but contains merely

a loss payable clause. In such cases the courts with unanimity hold that the mortgagee acquires no greater rights than those enjoyed by the mortgagor insured. Such a clause amounts merely to a designation of the person to whom the policy is to be paid in case of loss, and not to an insurance on his own behalf. *Union Building Association v. Rockford Insurance Co.,* 83 Iowa, 647.

"He is a mere appointee, whose right is not an independent one, but is a mere right to receive the whole or a part of the money to which the insured may be entitled." *Wonderlich v. Palatine Fire Insurance Co.,* 104 Wis., 395.

Cooley says that the rights of the appointee under an ordinary loss payable clause are wholly dependent upon the right of the insured to recover, and any act of the latter in violation of the conditions of the policy will also forfeit the rights of his appointee. Briefs on Insurance, p. 1520.

Mr. Ostrander, commenting on the rights of a mortgagee under an ordinary loss payable clause as distinguished from the New York and New Jersey standard mortgage clause, says:

"When a mortgagor procures insurance in his own name, and a loss occurs, the mortgagee can claim no benefit. If, however, the policy is indorsed, 'Loss payable to the mortgagee,' he is then entitled under the policy to receive any money which the insurer is liable to pay under the policy, but the making of the mortgagee the payee of the policy does not in any essential particular change the relations theretofore existing between the insurer and the mortgagor. The latter is still bound by the covenants of the contract, and any failure to perform the conditions precedent will discharge the insurer. The mortgagee can take no more than is due the mortgagor, and if by reason of any act or neglect of the latter an avoidance has resulted, the former has no remedy."

Mr. Cooley, on p. 1227, again says: "Therefore, if the insured could not recover, there was nothing on which the mortgagee could base his right to recover. It seems to be the theory generally that a policy taken out by the owner, payable to the mortgagee as his interest may appear, is directly on the owner's interest, and therefore the mortgagee's right is wholly depend-

ent upon the validity of the policy in the hands of the insured."

Flanders on Fire Insurance, p. 441, says: "Where the policy provides that the loss, if any, is payable to another (to a mort-gagee, for example), instead of the insured, it is merely a desig-nation of the person to whom it is to be paid, and is not an assignment of the policy; hence, it is the damage sustained by the party insured, and not by the party appointed to receive payment, that is recoverable from the insurers. The insurance being on the interest of the insured, if he parts with that in-terest before the fire, no loss is sustained by him, and, of course, none is recoverable by his assignee or appointee."

See, also, *Brecht v. Insurance Co.*, 18 L. R. A., N. S., 197; *Insurance Co. v. Hullman*, 96 Ill., 154; *Saving Institution v. Insurance Co.*, 119 Mass., 240; *Savings Association v. Fire In-surance Co.*, 44 N. Y. S., 929 (16 App. Div., 589); *Lindly v. Orr*, 83 Ill. App., 70; *Rackley v. Scott*, 61 N. H., 140; *Carter v. Rockett*, 8 Paige, 437; *Baldwin v. Insurance Co.*, 105 Iowa, 379.

It having been adjudged that Roper, the insured, had avoided the policy by his own act, and cannot recover, it necessarily follows that Holmes, the mortgagee, cannot recover under the ordinary loss payable clause, and that the court below erred in rendering judgment in his favor.

The judgments on the defendants' appeal are reversed.

The costs will be taxed against the plaintiffs, except in the appeal of the National Fire Insurance Company of Hartford, wherein Valentine is plaintiff.

Error.

HOKE, J., concurring: I concur in the disposition made of these cases, but do not wish to be understood as acquiescing to the proposition that the provisions of the standard policy for-bid or affect the doctrine of parol waiver on the part of insur-ance companies through the acts and assurances of their gen-eral agents. For the reasons stated in my dissent in *Black v. Insurance Co.*, 148 N. C., 169, I do not think the standard policy as set out and continued in our statute was designed or intended, under ordinary conditions, to affect the doctrine of

waiver at all. In the case before us, however, I am inclined to the opinion that the question of waiver is not presented, being controlled or removed by the fact of the dual interest existent in the company's agent, and for that reason I concur in the result.

I am authorized to say the CHIEF JUSTICE concurs in this position.