L. T. COTTINGHAM v. MARYLAND MOTOR CAR INSURANCE COMPANY.

(Filed 17 February, 1915.)

1. Insurance—Automobiles—Stipulations of Policy—Mortgages—Cancellation —Suspended Insurance.

Where the owner of an unencumbered automobile insures it under a statutory form of policy, stipulating, among other things, that the policy would be void if the interest of the assured be other than unconditional or sole ownership, or if the property be or become encumbered by a chattel mortgage, and thereafter gives a mortgage thereon which is canceled four days before the destruction of the machine by fire, this loss coming within the terms of the policy, the cancellation of the mortgage revives the original status of the policy, the temporary violation of the stipulation being immaterial, and puts the policy again in force, the effect of the mortgage being to invalidate the policy during the continuance of the lien, or to suspend the obligation of the insurance company during the violation of the stipulation. Revisal, secs. 4806, 4808.

2. Insurance, Fire—Standard Form—How Construed—Interpretation of Statutes.

The terms of a standard form of policy of fire insurance, though adopted by statute, are construed against the insurer and in favor of the insured.

3. Insurance, Fire—Stipulations—Mortgages—Revival of Policy—Inducements to Destroy—Fraudulent Misrepresentations.

The principle upon which the validity of a policy of fire insurance is revived after a lien on the property, made in violation of its provisions, has been satisfied, cannot be regarded as an inducement of the insured to destroy the property insured, or as false and material representations which will vitiate it. *Schas v. Ins. Co.*, 166 N. C., 55, and that line of cases, cited and distinguished.

APPEAL by plaintiff from *Shaw, J.*, at September Term, 1914, of MECKLENBURG.

*Stewart & McRae for plaintiff.*
*Cameron Morrison and J. M. McLain for defendant.*

CLARK, C. J. On 11 June, 1913, the defendant insured the automobile of the plaintiff against loss by fire for the term of one year, and the plaintiff paid the premium of $25 therefor.

On 19 September, 1913, the plaintiff executed a deed of trust on a number of horses, wagons, and other property, including the automobile. The deed of trust was paid off and canceled of record, on 22 September, only three days after its execution. On 26 September, four days thereafter, the automobile was destroyed by fire. The defendant filed an answer, but when the case was called for trial demurred to the complaint on the ground that the policy contained this provision: "This policy, unless otherwise provided by agreement indorsed hereon in writing by

an authorized agent of the company, shall be void if the interest of the assured be other than unconditional and sole ownership, or if the property hereby insured be or become encumbered by a chattel mortgage, or if any change, other than by death of the assured, take place in the interest or title of the property hereby insured, whether by legal process or judgment or by voluntary act of the assured or otherwise."

The court sustained the demurrer and the plaintiff appealed. The loss occurred as above stated, after the deed of trust was paid off and canceled.

2 Cooley Ins., 1780, citing many cases, says: "The general rule that a breach of the condition against encumbrance is ground for forfeiture must be modified where the encumbrance is merely temporary and is not in existence at the time of the loss. It may be regarded as settled by the weight of authority that the effect of the encumbrance is merely to suspend the risk, and on cancellation or discharge of the encumbrance the policy is revived."

Elliott on Insurance, sec. 205, collating the authorities, also says: "The weight of authority seems to support the view that a violation of a condition that works a forfeiture of the policy merely suspends the insurance during the violation, and if the violation is discontinued during the life of the policy and does not exist at the time of the loss, the policy revives and the company is liable, although it had never consented to the violation of the policy, and the violation was such that the company could, had it known of it at the time, have declared a forfeiture therefor." To same purport, Phillips on Insurance, sec. 975, and 1 May Insurance (3 Ed.), sec. 101; 2 A. and E., 288, and note.

A case almost exactly in point is *Strause v. Ins. Co.*, 128 N. C., 64, where the defendant set up a defense that the mill was operated at night, contrary to the provisions of the policy, and this Court said: "The fire occurred more than three months thereafter and was in no wise traceable, so far as the evidence shows, to the work at night, which had long ceased."

Revisal, 4806, provides: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance, the application for which is taken within this State, shall be deemed to have been made within this State and shall be subject to the laws thereof."

Revisal, 4808, is as follows: "All statements or descriptions in any application for a policy of insurance or in the policy itself shall be deemed and held representations and not warranties; nor shall any representation, unless material or fraudulent, prevent a recovery on the policy."

The purpose of Revisal, 4808, was to prevent insurance companies from escaping the payment of honest losses upon technicalities and strict construction of contracts.

In construing these sections in *McCarty v. Ins. Co.*, 126 N. C., 820, where at the time of issuance of policy there was a deed in trust to secure a debt of which the insurance company did not have notice and where the policy provided that it should be void if the interests of the insured be not truly stated, this Court quoted with approval from *Albert v. Ins. Co.*, 122 N. C., 92, as follows: "This law applies to all policies of insurance, both of fire and life; and unless such misrepresentations materially contribute to the loss, or fraudulently evade the payment of the increased premiums, they do not vitiate the policy. Ordinarily, these are questions of fact for the jury and not for the court."

In the present case the deed of trust given by the plaintiff embraced horses, wagons, and other property besides the automobile. This mortgage was paid off before the loss and was not material to the risk or fraudulent. The title of the plaintiff at the time of the loss was the same as at the time of the delivery of the policy. The deed in trust in no wise contributed to the loss or in any way affected the risk. *Weddington v. Ins. Co.*, 141 N. C., 244; *Watson v. Ins. Co.*, 159 N. C., 638, and *Roper v. Ins. Co.*, 161 N. C., 151, differ from this case vitally. In them the breach of the condition existed at the time of the loss. The law laid down in those cases had reference to the facts therein and has no bearing on this case.

In *Born v. Ins. Co.*, 110 Iowa, 379, it is held that giving a mortgage under the circumstances of the present case is a temporary breach of the policy, and when the breach was removed the policy was revived. In that case the mortgage given on the property was paid off and the fire occurred afterwards, and the Court said: "The theory upon which an existing mortgage is held to be a violation of a clause in the policy against an increase of risk is that it increases the risk. . . . At the time of the loss the personal property in question was in the possession and ownership of the plaintiff, free from the encumbrance of the mortgage and covered by his valid policy of insurance. Therefore he is entitled to recover for the loss thereof," citing *Wilkins v. Ins. Co.*, 30 Ohio State, 317.

On the rehearing of *Born v. Ins. Co.*, 120 Iowa, 299, the Court reaffirmed its former ruling. The *Born case* is reported 80 Am. St., 300, with full annotations, and the editor reaches this conclusion: "The general rule to be deduced from the weight of authority is that the violation of a condition in a policy of insurance which works a forfeiture thereof merely suspends the insurance during the violation, and that if such violation is discontinued during the life of the policy and is nonexistent at

the time of the loss, the policy revives, the insurance is restored, and the insurer is liable, although he has never consented .to a violation of the conditions in the policy and such violation has been such that the insurer could, had he known of it at the time, have declared a forfeiture therefor."

*Ins. Co. v. Toney,* 1 Ga. App., 492, holds that a breach of condition suspends the policy during the existence of the breach, and the removal of the breach revives the policy. In that case the policy contains this provision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The house did become vacant, but was reoccupied before the loss occurred.

It is thus declared by Cooley on Insurance, Elliott on Insurance, and the notes to the 80 Am. St. Reports, at p. 305, that the "weight of authority" is as above stated, and an examination of the authorities sustains that view, though Vance on Insurance, 433, says that the weight of authority is otherwise.

Among many cases, besides the above, sustaining the proposition that the removal of the breach revives the policy when it is removed previous to the loss and has in no wise contributed to it, are *Lounsbury v. Ins. Co.,* 8 Conn., 459, 21 Am. Dec., 686; *Ins. Co. v. Lawrence,* 4 Metc. (Ky.), 9, 81 Am. Dec., 521; *Joyce v. Ins. Co.,* 45. Me., 168, 71 Am. Dec., 536; *Ins. Co. v. Kimberly,* 34 Md., 234, 6 Am. Reports, 325; *Garrison v. Ins. Co.,* 56 N. J. Law, 235; *Ins. Co. v. Shoe Factory,* 80 Penn. St., 407; *Hinckley v. Ins. Co.,* 140 Mass., at p. 47, 54 Am. Rep., 445; *McKibban v. Ins. Co.,* 114 Iowa, 41; *Warehouse Co. v. Ins. Co.,* 163 Ill., 256.

The contrary view in Vance on Insurance, *supra,* is largely based upon *Ins. Co. v. Coos County,* 151 U. S., 452. But that case has no application here. There the policy contained a. provision that it should become void if without notice and permission "mechanics are employed in building, altering, or repairing the premises." It was found that such building and repairing increased the risk, and though the work was completed before the fire occurred and in no wise contributed to the fire, yet the alterations were very material and were in existence at the time of the fire. In that case there was a forbidden physical alteration made, which continued down to the fire. In the present case there was simply a mortgage, in no wise affecting the physical condition of the property, and which was canceled of record within three days and before the fire.

There are many other cases which support those which we have already cited that when such temporary encumbrance was removed before the fire it did not invalidate the risk, as there was no mortgage outstanding at the time of the fire. In *Ins. Co. v. Toney,* 1 Ga. App., 492, above cited, the Court, summing up the authorities, says: "The common people

who insure should not be entrapped by a harsh construction of a technical word. The insurance is revived by occupancy, though suspended during the vacancy. . . . So much for the authorities in support of the position announced by this Court. We are also very clear that this position is more in consonance with justice and sound reasoning. . . . It would be a harsh and unjust rule to hold that a condition which in no wise contributes to the loss should work a forfeiture of the insurance. The principle of the old legal maxim, *'Cessante ratione legis, cessat ipsa lex,'* would seem to be applicable. . . . No maxim of construction of contracts is better established or has been more generally approved than that of Lord Coke, 'He who considers merely the letter of an instrument goes but skin deep into the meaning,' and too minute a stress should not be laid on the strict and precise signification of words, to the destruction of the intention of the parties and the spirit of the contract." To this quotation of the Court from Lord Coke the counsel for the plaintiff in this case adds this citation from St. Paul: "The letter killeth, but the spirit giveth life." II Cor., ch. 3, v. 6.

In *Tompkins v. Ins. Co.,* 22 App. Div. (N. Y.), 380, where the policy provided that it should be entirely void if the property became mortgaged, and where the property was mortgaged, but the mortgage was paid off before the loss, the New York Court says: "The defendant contends that the policy was voided by the giving of the first mortgage. The court below found and we have held that the second mortgage extinguished the first. Even if the policy would have been void and inoperative during the life of the first mortgage, it revived on the death of that mortgage. This principle is well settled in the analogous case of a marine policy, which contains a limit of the waters within which the vessel is insured. If the vessel leaves the limited waters and is lost, the insurer is not liable, but the liability reattaches on the return of the vessel to limits. *Hennessee v. Ins. Co.,* 28 Hun. So here, although the policy was suspended during the existence of the first mortgage, it was revived when that mortgage ceased to exist, by the substitution of the second mortgage."

In *Hinckley v. Ins. Co.,* 140 Mass., 38, where the defense was that the insured property was temporarily put to an illegal use, contrary to the terms of the policy, the court in construing the word "void," says: "But, irrespective of this consideration, it is not the necessary meaning of the word 'void,' as used in policies of insurance, that it shall under all circumstances imply an absolute and permanent avoidance of a policy which had once begun to run. But the meaning of the word is sufficiently satisfied by reading it as void or inoperative *for the time being."*

It will be noted that this is the standard form of policy established by statute, and Phillips on Insurance, sec. 975, says: "After the policy has begun to run so the premium has become due it assuredly is but equitable

that a temporary noncompliance should have effect only during its continuance. To carry it further is to inflict a penalty on the assured and decree a gratuity to the insurer, who is thus permitted to retain the whole premium when he has merited but part of it."

In *Warehouse Co. v. Ins. Co.,* 76 S. C., 76, 10 L. R. A. (N. S.), 737, where the defense was that the hazard was increased contrary to the terms of the policy which made it void, the Court says: "The contract of insurance must, like other contracts, be enforced according to its terms. In construing such contracts, however, courts should endeavor to ascertain from the language used, in the light of the surrounding circumstances and the nature of the business, the safeguards which the parties intended to place around themselves. It may be reasonable to suppose an insurance company would desire to reserve the valuable right of canceling a policy, even on a temporary increase of hazard, if known to it at the time, because such change might result in loss; but it is not reasonable to impute to it a purpose or desire to curtail its own revenue by canceling a policy on account of the temporary increase of hazard which has come to an end without loss, and from which it could not possibly suffer detriment. Hence there may be ground for holding a temporary increase of hazard forbidden by the policy to avoid insurance without action or even knowledge on the part of the company, when the loss resulted from that cause. But there is no ground for such an inference when the increase of hazard came to an end without loss. The greater weight of authority supports this conclusion."

The last line in the above quotation reiterates what is said above by Cooley, Phillips, May, and Elliott in their works on insurance, and is a correct statement.

*Silver v. Assurance Corporation,* 61 Wash., 593, also sustains the proposition that the removal of the temporary breach of the condition revives the policy. Also *Ins. Co. v. Pitts,* 88 Miss., 587, 7 L. R. A. (N. S.), 627.

In Nebraska, where a policy contained a provision making it void if the property should be mortgaged, it was held that the payment of the mortgage revived the policy. *Ins. Co. v. Schreck,* 27 Neb., 527; *Ins. Co. v. Dierks,* 43 Neb., 473; *Johansen v. Ins. Co.,* 54 Neb., 548.

*McClure v. Ins. Co.,* 88 Atl. (Penn.), 921, holds the same general principles as the authorities above cited. In that case the defense was that certain prohibited articles were kept upon the premises. The policy provided that it should be void if they were. The Court held that if they were removed before the fire and in no wise contributed to the loss, the policy was revived.

Independent of the overwhelming weight of authority, there can be no reason to release the insurance company from liability for a loss

which accrued after the forbidden mortgage was canceled, the mortgage having in no wise any connection with the loss.

The terms of a policy of insurance are construed against the insurer and in favor of the insured, and this is true although a standard form of policy has been adopted under legislative enactment. *Gazzam v. Ins. Co.,* 155 N. C., 330.

The stipulation that the policy shall be void if the property "be or become encumbered by chattel mortgage" was inserted for the benefit of the insurer upon the idea that if the owner of the property was permitted to insure and then mortgage the property that it would be an inducement to him to destroy the property by fire, and if the stipulation is given effect so that this purpose and intent of the parties can be carried out, there is no reason for extending it further. In other words, it was the intent of the parties to prevent an increase of the risk to the insurer, and this can be amply protected by holding that the policy is only void if the mortgage is in force at the time of the loss. Instead of increasing the risk, this interpretation of the contract decreases it, because while the mortgage is in existence there is no liability on the part of the insurance company, and if a loss then ensues there can be no recovery, and when the mortgage is canceled the insurer assumes no responsibility that it was not liable for when the policy was first issued.

Nor is this construction against public policy as offering an inducement to the insured to destroy his property, because if destroyed while the mortgage is in force the total loss falls on him. See, also, 9 A. and E. Anno. Cases, 54, 11 A. and E. Anno. Cases, 780, and cases cited.

Our cases on the subject, which are collected in *Roper v. Ins. Co.,* 161 N. C., 151, were decided correctly, because in them the stipulation was violated at the time of loss and it was properly decided that the policy was void.

Nor is this construction in conflict with the cases of *Fishblate v. Fidelity Co.,* 140 N. C., 589; *Bryant v. Ins. Co.,* 147 N. C., 181; *Alexander v. Ins. Co.,* 150 N. C., 536; *Gardner v. Ins. Co.,* 163 N. C., 367, and *Schas v. Ins. Co.,* 166 N. C., 55, where a representation, actually false and material, was held to vitiate the policy, although the misrepresented fact may not have contributed to the loss, for the insurance company is entitled to know the facts about which inquiry is made, in order to decide whether it will enter into the contract or not, and those things are material for it to know, which would naturally affect its judgment or decision as to making the contract, or which, by its inquiries, it has made material, the company being the judge of what it should know in order to determine whether or not it will issue the policy.

The demurrer should have been overruled.

Reversed.