J. EDWARD SMITH ET AL. v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONN.

(Filed 10 April, 1918.)

1. **Insurance, Fire—Policies—Contracts—Stipulations.**

The rule that contracts of fire insurance are construed against the insurer in favor of the insured is not changed by the adoption of the standard statutory form, and ambiguous terms and phrases therein are resolved in favor of the latter; and where two interpretations are permissible, the one which without violence to the terms employed will sanction the claim and cover the loss will be adopted.

2. **Insurance, Fire—Policies—Contracts—Forfeitures.**

The courts look with disfavor upon interpretating a contract of fire insurance to effect a forfeiture, and a provision in such policy which might avoid it cannot have this effect if its violation has in no way contributed to a loss thereunder, the subject of the action.

3. **Same — Lumber — Clear Space Clause—Damages—Woodworking Enterprise—Sawmills.**

Where the policy of insurance on lumber against fire provides that the policy would be void unless a continuous clear space of 200 feet shall be maintained between it and "any woodworking establishment or drykiln," excepting tramways and the transportation of lumber across such space; and in an action to recover damages for the loss of the lumber it is shown that the required space was not kept between it and a sawmill operated by steam, but that the plant had been shut down for several days in anticipation of moving it elsewhere, and the fire causing the damages had originated elsewhere without negligence on the part of the insured: *Held*, the clause referred to does not invalidate the policy or prohibit recovery thereunder. *Semble*, a sawmill is not a woodworking establishment in contemplation of the policy.

APPEAL by plaintiffs from *Connor, J.*, at the February Term, 1918, of CUMBERLAND.

This is an action on a fire insurance policy issued by the defendant company on 24 April, 1917, and insuring certain lumber in the sum of $1,500 from twelve months from that date.

The policy contained the following stipulation: "It is a condition of this contract that a continuous clear space of 200 feet shall be maintained by the assured between the property hereby insured and any woodworking establishment or any drykiln (except tramways upon which lumber is not piled), and such space shall not be used for the piling of lumber or timber products, but this shall not be construed to prohibit loading or unloading within, or the transportation of lumber and timber products across, such clear space; otherwise this policy shall be void."

The material facts bearing on the liability of the defendant are as follows:

4. That the lumber of the plaintiffs for which the present claim is presented was destroyed by fire on 10 August, 1917, said lumber being located on the premises known as the D. R. Graham land, Rennert Township, Robeson County, North Carolina.

5. That at the time of said fire the lumber so destroyed was piled within less than 200 feet of an open-shed sawmill.

6. That from the issuance of said policy until within about three or four days of the fire above mentioned, said sawmill was in continuous operation, said operation consisting in the sawing of logs into lumber and cutting the lumber into sizes of varying length and width. That such operations were carried on by means of machinery, and in this connection the said sawmill was equipped with a steam engine, boiler, furnace, smokestack, shafts, belts and pulleys, and other equipment in general use in such plants.

7. That the lumber above described was at the time of its destruction piled in the same place where lumber had been piled at the time said policy of insurance was issued, and between the issuance of the policy and the time of the fire there was no communication between the parties in reference to the location of said lumber.

8. That the policy of insurance referred to was applied for by the plaintiffs in Philadelphia, Pa., was sent to .Charlotte, N. C., and there made out upon the form approved by the State of North Carolina, and was then delivered to the plaintiffs in Philadelphia; that prior to the issuance of said policy there was no inspection by the defendant, either of the lumber or the premises upon which it was piled, and no agent, officer, or employee of the defendant had knowledge or notice of the location of said lumber in reference to said sawmill, either at the time said policy was issued or at any time between the issuance and the date of the said fire; and there was abundant space on said premises, more than 200 feet from said sawmill, upon which said lumber could have been piled.

9. That the rate of insurance, or premium, at which the said policy was issued and the acceptance of said risk were controlled or influenced by the condition in said policy, "that a continuous clear space of 200 feet should be maintained by the assured between the property hereby insured and any wood-working establishment," etc.

10. That the plaintiffs had purchased the lumber insured from one E. J. Graham, and immediately after said fire insurance policy was issued plaintiffs informed the said E. J. Graham that they had taken out insurance upon the lumber covered by said policy of insurance and directed him to pile said lumber not less than 200 feet from said sawmill, and the plaintiffs supposed that said direction had been complied with and at no time did the plaintiffs or any agent of the plaintiffs know that any portion of said lumber was within less than 200 feet of said sawmill.

11. That at the time when the fire originated and for some days prior thereto said E. J. Graham's timber supply for that plant had been exhausted, and he was about to remove the sawmill to another location, though said sawmill was started up a few days after the fire for the purpose of sawing a few logs on the yard, in which lumber the plaintiffs had no interest, and the lumber of plaintiffs which they had purchased from said E. J. Graham was being loaded and hauled as rapidly as possible, though the amount of said lumber specified in the proof made by plaintiffs to defendant was consumed by said fire, the lumber so consumed not having been thus located or hauled, and there was other lumber owned by plaintiffs at said plant which was not consumed.

12. That the value of the lumber consumed by fire and covered by the policy attached hereto was upwards of $1,500, and if the defendant is liable on said policy it is liable for the sum of $1,500 and interest on same from 10 October, 1917.

13. That the fire which destroyed the said lumber did not originate from said sawmill, but burned towards the mill building, and was extinguished within about 62 or more feet of the mill, and neither the mill building nor any part of the machinery connected therewith caught on fire.

14. That said fire did not originate from any act of negligence on the part of the plaintiffs or their agents or servants.

15. That the plaintiffs have duly submitted to the defendant a proof of loss on the above claim and the defendant has refused to pay same.

His Honor rendered judgment in favor of the defendant and the plaintiff excepted and appealed.

*H. McD. Robinson for plaintiffs.*
*John M. Robinson for defendant.*

ALLEN, J. The lumber of the plaintiffs was insured by the defendant upon condition that a space of 200 feet should be kept clear between the lumber and any wood-working establishment or drykiln, with provision that this stipulation should not be construed to prohibit loading or unloading within such space.

The lumber destroyed was within 200 feet of a sawmill, which had been used to manufacture lumber but was not in operation at the time of the fire and had not been for several days, being stopped in contemplation of a removal of the mill to another location.

The lumber of the plaintiffs was being loaded as rapidly as possible at the time of the fire, which did not originate in or about the sawmill but at a distant point, nor was its origin due to the negligence of the plaintiffs or their agents.

Does the fact that the lumber was within 200 feet of the sawmill, under these circumstances, relieve the defendant from liability? We think not.

"The rule of construction prevails almost universally that contracts of insurance are construed against the insurer and in favor of the insured, and this has not been changed by the adoption of standard form of insurance. *Wood v. Insurance Co.,* 149 N. C., 385; *Gazzam v. Insurance Co.,* 155 N. C., 338; *Cottingham v. Insurance Co.,* 168 N. C., 265." *Johnson v. Insurance Co.,* 172 N. C., 146.

Doubts as to the meaning of ambiguous terms and phrases are resolved against the insurer, and Mr. Vance says in his work on Insur-

ance, quoted in *Jones v. Casualty Co.,* 140 N. C., 264: "Probably the most important general rule guiding the courts in the construction of insurance policies is that all doubt or uncertainty, as to the meaning of the contract shall be resolved in favor of the insured."

Again, the Court says in *R. R. v. Casualty Co.,* 145 N. C., 116: "When doubt arises by reason of the language employed to express the agreement, so that it admits of two interpretations, the courts, as a general rule, adopt that one which, without any violence to the words selected by the parties, will sanction the claim and cover the loss. *Goodwin v. Assurance Society,* 97 Iowa, 226; *Kendrick v. Insurance Co.,* 124 N. C., 315," and in *Johnson v. Insurance Co.,* supra, "The courts look with disfavor upon forfeitures," *Skinner v. Thomas,* 171 N. C., 98, and the trend of modern authority is that a stipulation in a policy which might avoid it does not have this effect if it in no way contributes to the loss. *Cottingham v. Insurance Co.,* 168 N. C., 264.

Applying these principles, the defendant cannot be relieved from liability.

The language used, "a wood-working establishment," while perhaps comprehensive enough to include a sawmill, which merely cuts the logs into rough lumber, is not usually so applied, but to plants with more complicated machinery.

"Woodwork" is defined in the Century Dictionary as "objects or parts of objects made of wood, that which is produced by the carpenter's or joiner's art," and "woodworker" as "a worker in wood, as a carpenter; joiner, or cabinet maker," and those employed to operate a sawmill are generally referred to as a sawyer and the hands, and are not carpenters, joiners, or cabinet makers.

The term is at least ambiguous, and might be held not to include a sawmill, but conceding that it does so, when considered in connection with the nature of the contract and the danger sought to be provided against, it reasonably means an establishment working wood at the time of the injury complained of.

The purpose of the condition, requiring a clear space of 200 feet, was to decrease the risk and the danger apprehended was the escape of fire from the wood-working establishment. The parties had in mind a live plant and not a dead mill, and the contract should be given a reasonable construction to conform to its spirit.

Suppose the mill had been located and abandoned without being operated a day, would it not be "sticking in the bark" to say there could be no recovery because the lumber was within 200 feet of a mill which had never had fire in it, and when there was no accumulation of sawdust or any other inflammable matter, and if so why should not the same rule prevail when the mill had not been operated for several days in contem-

plation of a removal, and when there is no evidence of an accumulation of combustible matter about the mill or that the fire originated near the mill.

The stipulation in regard to the drykiln also throws light upon the meaning of the contract because there is no accumulation of combustible matter of any kind about a drykiln, and the only danger of fire on account of nearness to one is while it is in operation.

Again, the proximity of the mill did not in any degree contribute to the loss as the fire did not originate in or about the mill and reached the lumber of the plaintiffs from a point more than 200 feet from the mill.

Again, this stipulation, on which the defendant relies, expressly provides that it shall not be construed to prohibit the loading and unloading of lumber within 200 feet of the wood-working establishment, and the parties have agreed that the plaintiffs had bought the lumber a few days before the fire, and at that time they were loading and hauling the lumber as rapidly as possible.

In our opinion, the defendant is liable under the contract of insurance and judgment should be entered in favor of the plaintiffs upon the agreed statement of facts.

Reversed.