**E. W. GARVEY and wife, Mary L. Garvey, Plaintiffs,**

v.

**OLD COLONY INSURANCE COMPANY. Defendant.**

Civ. No. 733.

United States District Court
E. D. North Carolina,
Wilmington Division.
July 8, 1957.

Cicero P. Yow, Wilmington, N. C., for plaintiffs.

Joshua James, Wilmington, N. C., for defendant.

GILLIAM, District Judge.

This is an action on a policy issued by defendant insuring plaintiffs against loss by fire and lightning, and containing extended coverage for loss by windstorm, hail and explosion, tried without a jury.

The policy was issued on December 1, 1955, and the frame building described in the policy was completely destroyed by fire of undetermined origin during the night of January 23, 1956. At the time the policy was issued Mrs. Garvey represented to the agent that the insured dwelling house was then occupied by a tenant, but the evidence satisfies me that on that date the house was unoccupied and that it had been so for several days; it was continuously unoccupied until the fire which destroyed it. The evidence does not satisfy me, however, that the misrepresentation was wilful or intentional. The evidence establishes these facts with regard to the rental of the property and plaintiffs' contact with the tenant: The property was rented to a tenant by the name of English at $20 per month in March, 1955; the plaintiffs lived in Wilmington, N. C., 30 to 50 miles from this rural property located near Wallace, and the father of Mrs. Garvey, who lived near the property, looked after the collection of the rent; only small amounts on the rent were paid from time to time, but plaintiffs did not press for payment of the past due rent or move to eject the tenant since she had known him all of his life, because he had a wife and small child and also because she kept hoping that he would do better and catch up on the rent; payments were made to the father who remitted to Mrs. Garvey; at the time the policy was written Mrs. Garvey, then out of touch with the situation, told the agent that the property was then occupied by the tenant English; neither Mr. Garvey nor Mrs. Garvey had heard that English had moved out and Mrs. Garvey made the statement to the agent in good faith and in ignorance of its falsity.

The policy provides:

"Conditions Suspending or Restricting Insurance. Unless Other-

wise Provided in Writing Added Hereto This Company Shall Not Be Liable for Loss Occurring (a) * *; (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty (60) consecutive days; (c) * * *."

This provision does not seem to bear on the question for consideration since, though the premises may have been unoccupied for sixty consecutive days, only fifty-four days elapsed between the date of the policy and the date of the fire.

The policy also contains this provision:

"Concealment, Fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured there, or in case of any fraud or false swearing by the insured relating thereto."

I find no breach of this provision. It is true that on the 19th of July, 1956, plaintiffs filed sworn proof of loss, containing the statement that the "building * * * was occupied at the time of said loss * * * by tenant", and, as above noted, this was a false statement; but the evidence does not satisfy me that this was a wilful concealment or misrepresentation. It is a matter of common knowledge that the underwriter in his effort to afford assistance to his customer usually types or writes up the proof of loss and the insured signs as a matter of course. The evidence does not satisfy me either that insured knew this statement was contained in the proof of loss or knew at the time that it was false.

The decision comes down to whether the false statement as to occupancy, even though innocently made, defeats recovery.

N.C.Gen.Stat. 58–30 says:

"Statements in application not warranties.—All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, *unless material or fraudulent*, will not prevent a recovery on the policy." (Italics added.)

As said in Cottingham v. Maryland Motor Car Insurance Co., 168 N.C. 259, 261, 84 S.E. 274, 275, L.R.A. 1915D, 344: "The purpose of (this law) was to prevent insurance companies from escaping the payment of honest losses upon technicalities and strict construction of contracts." The North Carolina law continues to be, however, that a fraudulent or material misrepresentation in the application for insurance, even though innocently made, will prevent recovery on the policy. Having held that the misrepresentation was not fraudulent it remains to say whether it was material. The cases establish that every fact stated will be deemed material which would materially and naturally influence the judgment of the insurance company either in accepting the risk or in fixing the premium rate. Bryant v. Metropolitan Life Ins. Co., 147 N.C. 181, 60 S.E. 983; Gardner v. North State Mutual Life Ins. Co., 163 N.C. 367, 79 S.E. 806, 48 L.R.A.,N.S., 714; and others.

There is raised, therefore, the issue of fact whether the circumstance of unoccupancy would have naturally and materially influenced the judgment of the defendant either in accepting the risk or in fixing the premium rate. The burden of this issue is on the defendant, since under North Carolina law where delivery of the policy and loss have been shown, and the premiums have been paid, the burden of establishing an affirmative defense rests upon the insurer. Thomas-Yelverton Co., Inc. v. State Capital Life Insurance Co., 238 N.C. 278, 77 S.E.2d 692; and many others. There is no evidence before me to show that the fact of unoccupancy would have affected the premiums, and no claim of this nature is asserted, so I will consider only whether that fact would naturally and materially have in-

758

fluenced the company with reference to the risk. There is no evidence to show that the defendant would have refused to write the same policy for the same premiums had it known that the premises were not occupied, but the policy itself seems to indicate that it would have done so. For instance, on page 2 of the policy we find this: "Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring * * * (b) while a described building * * * is vacant or unoccupied beyond a period of sixty consecutive days * * *" From this it is fair to assume that the company considered unoccupancy for less than sixty consecutive days, which is the fact here, as immaterial to the risk; it is also to be inferred from this language that by simple endorsement on the policy unoccupancy for more than sixty days might have been allowed.

Under the North Carolina Manual of Rates and Rules, issued by the Rating Bureau, an agency created by Article 13 of Chapter 58, General Statutes (see page 108), the sixty-day vacancy permission contained in the Standard Policy may be extended by payment of 10 percent (not exceeding 15 cents) of the annual rate for each month or fraction thereof. The policy allows sixty days vacancy without affecting the coverage. After that, unless the additional premium is paid for an extension, the dwelling becomes uninsured, but, as plaintiffs' counsel point out, "there is no limit to the number of sixty-day vacancies. The dwelling may be occupied on the day the policy is written, vacated the next day and left vacant for sixty days, then reoccupied for a week and vacated for another sixty days, and so on."

It is my conclusion that the issue of materiality of the untrue representation should be decided in favor of plaintiffs. The evidence does not satisfy me that knowledge of the unoccupancy would have influenced the company materially on the question of risk. No doubt attention would have been called to the sixty-day provision and even if not had

the premises continued unoccupied for more than sixty consecutive days coverage would have expired, but the loss occurred on the fifty-fourth day and the liability of defendant continued to the date of the loss. If it had been intended that the policy would be ineffective to create coverage unless the premises were occupied at the time of issue, it is reasonable to assume that a provision to this effect would have been written therein. The clear implication from the sixty-day vacancy clause is, to my mind, that unoccupancy for less than sixty days is to be considered immaterial to the risk.

Having so concluded, it remains to be decided what amount plaintiffs should recover. The recovery, according to the policy, is limited to "the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property", in no event in excess of $5,000, the face of the policy. Plaintiffs are convinced and contend that the destroyed tenant house had a cash value of $5,000, while defendant contends that its cash value was much less. This one-story house of frame construction, with composition roof, consisted of a living room, two bedrooms, a combination kitchen and dining room, and a hall, with stoop at the front; it was heated by fireplaces and wood heaters; it was lighted by electricity, had no water or sewerage facilities; it was built in either 1942 or 1943 and at best was in only a fair state of repair. It seems pertinent to consider that the property was rented just before the loss for only $20 per month and that during a period of nine months the owners collected but $42. In the light of these facts and evidence offered by the defendant on the question of value, it is clear to me that the tenant house had a cash value of substantially less than $5,000. But, as is always true when it comes to fixing value of property of this nature, a reasonable approximation is the best that can be done. I find a liberal estimate of the value to be $3,000.

Therefore, it is adjudged that plaintiffs recover of the defendant the sum of $3,000 with interest at six percent from the date of entry hereof, and their costs.