Argued February 16, affirmed March 8, 1921.

## SAMCHUCK *v.* INSURANCE CO.

(194 Pac. 1095.)

**Insurance—Whether Adjustment was Binding Held for the Jury.** [1]

1. In action to recover amount agreed on in adjustment of loss of insured building, evidence *held* sufficient to take case to the jury, though defendant claimed the "adjustment" was not binding because of failure to disclose other insurance.

From Multnomah: HARRY H. BELT, Judge.

Department 1.

Plaintiff brought this action to recover $911.70, based upon an adjustment and agreement to pay that amount for a loss on a building occasioned by fire. The building was insured by the defendant company by a policy issued in 1915. The cause was tried before the court and a jury, and a verdict rendered in favor of plaintiff. The defendant appeals from a judgment rendered thereon.                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondent there was a brief over the names of *Mr. F. S. Senn* and *Mr. Morris Goldstein,* with an oral argument by *Mr. Senn.*

BEAN, J.—1. The case was here upon a former appeal and the opinion is reported in 91 Or. 692 (179 Pac. 257). The law governing the case was practically settled by the former opinion. The issues in the case were referred to in that opinion, and need not be repeated here.

The main question presented upon this appeal by defendant is, that there is no testimony showing that there was an adjustment of the loss and an agreement to pay by the defendant. This is contended for upon the ground that there was another policy of insurance upon the building, at the time of the loss, which was issued by the Oregon Fire Relief Association, and that plaintiff at the time of the adjustment failed to inform the defendant of the other policy, but stated that there was no other insurance on the building. At the appropriate times counsel for defendant moved the court for a nonsuit and also for a directed verdict.

It is shown by the testimony, and practically conceded, that there was an adjustment of the loss under the policy. We find in 1 Words & Phrases, 195, the following:

"An 'adjuster' is one who determines the amount of a claim, as a claim against an insurance company: *First Nat. Bank* v. *Manchester Fire Assur. Co.,* 64 Minn. 96 (66 N. W. 136, 138).

"Ordinarily an 'adjustment of loss' in fire insurance is equivalent to a promise to pay the loss so determined; for ordinarily an adjustment implies a liability for the loss and consequent promise to pay. But an adjustment does not necessarily imply liability, and accordingly it may be made under a reservation of the question of liability. An adjustment made subject to the terms and conditions of the policy, which relieves the insurer from liability in case certain conditions or stipulations are not fulfilled by the insured, means simply that the company will pay the loss as fixed under the terms and conditions of the policy, if under them the insured is entitled to payment: *Whipple* v. *North British & Mercantile Fire Ins. Co.,* 11 R. I. 139, 140 (cited in *Fournier* v. *German-American Ins. Co.,* 23 R. I. 36 (49 Atl. 98, 99).

"In the law of insurance, 'adjustment' means to settle or bring to a satisfactory state, so that the parties are agreed in the result. The preliminary proofs are to be acted on by negotiation, by statements on the one side, demands for correction or addition on the other, by compliance with such request, until the parties agree. If they do not agree, there is not an adjustment: *City of New York* v. *Hamilton Fire Ins. Co.,* 39 N. Y. 45, 47 (10 Am. Dec. 400)."

Egnat Samchuck, the plaintiff, is a foreigner and speaks very poor English. He was accompanied by an interpreter at the time of the adjustment, but endeavored to talk mostly in English. There was a great chance for misunderstanding. He testified to the effect, that at the time the original policy on the building was issued by defendant he took another policy on the building with him to the office of the agents of defendant and presented it to them. As to the settlement, he states that after the house

burned Mr. Patterson, one of the adjusters, came to his place and examined the building and made figures.

Samchuck: "Yes; he makes figures at the house, and he wants me to come to the office, and this fellow or another one says $911 give for my fire, for my loss. ·

"Q. What did Mr. Everts say to Mr. Healy?

"A. Mr. Everts says to Mr. Healy, 'We give $1100.'

"Q. How much?

"A. I mean $911.

"Q. Then what did Mr. Healy say?

"A. He everything explained to me that way.

"Q. And then what did you say?

"A. I says, 'If this company give $911 and another company give something I can fix my house again.' "

Mr. William M. Patterson, the adjuster, testified on behalf of defendant to the purport that he had the entire adjustment of the loss; that he made estimates of the same, figured the amount of material and labor necessary, and then went back to the office and got prices of material and figured the total $911.70; that he reduced the figures to writing in the form of a memorandum and left the same at the office of the Adjustment Bureau; and that Mr. Everts completed the adjustment. Mr. Everts, the manager of the Pacific Coast Adjustment Bureau's office, testified on behalf of defendant to the effect that Mr. Patterson, who was employed by the Bureau, brought him a memorandum containing the data sufficient to fill out the proof of loss, including a detailed estimate of the damage as he had prepared it. Mr. Samchuck came to the office with George Healy, an interpreter, and Mr. Everts told Samchuck that Mr. Patterson had made up the estimate and that the amount was $911. Mr. Everts further deposed as follows:

"I asked him if I understood correctly that there was no other insurance. He answered, 'No.'

"Q. Did you say that to Mr. Healy or to Mr. Samchuck?

"A. The two stood opposite me right at the corner of the stenographer's work table, possibly two and one-half feet apart. I asked him if I understood correctly that there was no other insurance. * *

"He answered 'No.' I said, 'Then, if this is satisfactory I can make up your papers, have them made up in a few moments, and you can sign them.' They waited until the stenographer had made up the proof of loss and took it and went out and brought it back signed, and it was sent by me to our office in San Francisco."

He stated that he did not then know there was other insurance on the building.

A draft was issued by the defendant company for the amount of $911.70, and sent to plaintiff, attached to a receipt which was executed, and the draft indorsed and deposited with the release in a bank in Portland, Oregon. Upon learning of the other policy of insurance, defendant stopped payment of the draft.

If the jury believed the statement of Samchuck, taking that in connection with the testimony of the adjusters that there was an adjustment, and the fact of the issuance of the draft in payment for the amount settled upon, they were warranted in finding that there was an adjustment of the loss, and an agreement to pay the same, made by the defendant through its adjusters. The statement of Mr. Everts that, if the amount was satisfactory to Samchuck, he would make up the papers for him to sign, clearly indicated that there was an agreement as to the amount to be paid for the loss.

The defendant seeks to overcome the adjustment on account of the misunderstanding as to the other insurance. It is admitted that the policy under which

the loss was adjusted permitted other insurance. It was alleged in defendant's answer that the adjustment was obtained by fraud. Upon the last trial the defendant waived the defense growing out of such allegations and tried the case upon the theory that the alleged misrepresentations of Samchuck were the result of ignorance or misunderstanding on his part. The plaintiff denied the fraud, and alleged that at the time of the execution of the policy, and also at the time of the adjustment of the loss, the defendant had full knowledge of the other insurance. He also asserts that at the time the proofs of loss were prepared by the adjuster that he did not know that they contained the statement that there was no other insurance; that he understood the $911.70 was the loss of this particular company; that his house was worth about $1,900; and that he understood the $911.70 was the proportion which the defendant company expected to pay.

In the former opinion it is stated:

"Where the plaintiff alleges, and the defendant practically admits, that the loss had been adjusted, and that the defendant had agreed to pay a certain sum, the burden of proof is reversed, and falls upon the defendant to show to the satisfaction of the jury such facts as would overturn the adjustment."

The question as to whether or not there was an agreement between the plaintiff and the defendant that the defendant would pay the plaintiff $911.70 on account of the loss on the building caused by fire, or whether the minds of the parties met upon a full and complete adjustment and settlement of the matter, was for the jury to decide. It was submitted to them under instructions which were practically approved in the former opinion. By their verdict the jury has

passed upon the disputed question. The testimony, which is competent, supports the verdict. Therefore there was no error on the part of the trial court in denying the motion for a nonsuit and that for a directed verdict.

Counsel for the defendant, in their brief, refer to requested instructions to the jury. The cause was fairly submitted to the jury by a charge which was thoroughly considered and approved in the former opinion. We find no other assignments of error contained in a bill of exceptions which are now necessary to be considered.

It follows that the judgment of the Circuit Court should be affirmed. It is so ordered. AFFIRMED.

McBRIDE, BENSON and HARRIS, JJ., concur.