STACY, C. J., BARNHILL and WINBORNE, JJ., concur in result.
The issues and verdict indicate the controversy:
"1. Did the plaintiff assume liability and incur expense in connection with the claim of Dorothy Rumley contrary to the terms of the policy, as alleged in the answer? Ans.: `No.'
"2. Did the plaintiff incur expense for the imperative surgical relief of Dorothy Rumley, as alleged in the complaint? Ans.: `Yes.'
"3. Did the defendant authorize, or ratify, the incurring of such medical expense, as alleged in the complaint? Ans.: `Yes.'
"4. Was the settlement of the claim of Dorothy Rumley and Gladys Rumley Hoffman made by the plaintiff in good faith, upon reasonable terms and with reasonable prudence and care, as alleged in the complaint? Ans.: `Yes.' *Page 790 
"5. What amount, if any, is the plaintiff entitled to recover of the defendant by reason of the defense of the actions brought by the guardian of Dorothy Rumley and Mrs. Gladys Rumley Hoffman and by reason of the settlement of said claims? Ans.: `$3,591.50, with interest from January 29, 1940, on the sum of $2,981.50.'
"6. What amount, if any, is the plaintiff entitled to recover of the defendant by reason of expense incurred by the plaintiff for the imperative surgical relief of Dorothy Rumley? Ans.: `$485.00, with interest from April 29, 1940.'"
The court below rendered judgment on the verdict.
The pertinent portions of the policy relied on either by the plaintiff or the defendant, are as follows:
"Stock Company Automobile Policy — No. PT 29210.
"American Fidelity and Casualty Co., Incorporated, Richmond, Virginia. (Herein called the Company). In consideration of the Premium Herein Provided, DOES HEREBY AGREE:
"To Indemnify the Assured named in Statement (I) of the Schedule of Statements and herein called the Assured:
"Against Loss from the Liability Imposed Upon the Assured arising or resulting from claims upon the assured for actual damages to persons accidentally receiving bodily injuries, and damage to property by reason of the ownership, maintenance or use of any of the automobiles or motor vehicles as enumerated and described in Statement VI of the schedule of statements only while being operated for the purposes stated and subject to the limitations in Statement VIII of said schedule, to an amount not exceeding the limits hereinafter stated in Statement IV of said schedule, if such claims are made on account of BODILY INJURY TO PERSONS.
"(1) Bodily Injury or Death suffered by any person or persons, other than the Assured or his employees, as the result of an accident occurring while this Policy is in force; including such first medical aid as shall beimperative at the time of any such accident.
"DEFEND AND PAY COSTS AND EXPENSE —
"(3) To Defend in the name and on behalf of the Assured any suit brought against the Assured to enforce, a claim, whether groundless or not, provided notices are given to it as hereinafter required, for damages suffered or alleged to have been suffered on account of bodily injuries or death, or the damage to or the destruction of property, as the result of an accident covered by this Policy and caused in the manner and under the circumstances as herein provided, and while this Policy is in force and to pay all costs taxed against the Assured in any legal procedure against the Assured, which is defended by the Company in accordance with the foregoing agreement; and to pay interest accruing upon *Page 791 
any judgment rendered in connection therewith, on that portion of the judgment not in excess of the Policy limit, until the Company has paid, tendered, or deposited in court, such part of such judgment as does not exceed the limits of the Company's liability under this Policy, provided, however, that the Company shall not be obligated to make or furnish any appeal bond in connection with any suit or suits defended hereunder.
"This Policy is issued by the Company subject to the following conditions, limitations and agreements which are a part of the Policy and to which the Assured, by the acceptance of this Policy, agrees:
"CO-OPERATION OF ASSURED; EXPENSE.
"(B) The assured shall cooperate with the Company in securing information and evidence and the attendance of witnesses and in the settlement or defense of any suit or prosecution of any appeal. In case of trial the Assured, if requested, shall present himself in due time for the preparation of his defense at the office of the attorneys designated by the Company and shall attend such trial of such suit. The assured shall not admit or voluntarily assume any liability nor offer to settle any claim, nor incur any expense, except for such immediate surgical relief as isimperative, without the written consent of the Company. The Assured shall at all times render to the Company all co-operation and assistance within his power. Failure to co-operate in any of the foregoing respects shall render this Policy null and void.
"ASSURED'S RIGHT OF RECOVERY, ETC.
"(E) This insurance is intended solely as an indemnification to the Assured against loss from the causes named and for certain expenses enumerated herein, and is not intended to be for the benefit of third parties, except as herein specifically set out. Provided, however, that should any law regulating the vehicles insured hereunder require the Company to alter the terms of this Policy by endorsement or otherwise so as to make the Company liable for any loss which it would not otherwise be required to pay under the terms of this Policy, then the Assured shall reimburse the Company for any and all such loss, cost or expense, paid or incurred by the Company as the result of any such statute or statutory endorsement. The Company shall not be liable to pay any loss nor shall any action be brought against the Company, to recover under this Policy until a final judgment shall have been recovered against the Assured in the Court of last resort after trial of the issue, and in which suit the Company is not joined as a party, provided, however, that the Company shall have the right to deduct from the payment of any loss hereunder, any sums due the Company by the Assured. Bankruptcy or insolvency of the Assured shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of this Policy and in case execution against the Assured is returned *Page 792 
unsatisfied in an action brought by the injured person, or by his or her personal representative in case death results from the accident, because of such bankruptcy or insolvency, an action may be maintained by such injured person, or his or her personal representative, against the Company on this Policy and subject to its terms and limitations for the amount of the judgment in said action, not exceeding the limits provided in this Policy. In no event shall any action be maintained against the Company under this Policy unless brought within one year after right of action accrues, provided, however, that the minimum time set by the statutes of the State in which the Assured resides shall govern. The inclusion herein of more than one Assured shall not operate to increase the limits of the Company's liability.
"ALTERATIONS IN POLICY; NOTICE
"(L) No erasure or change appearing on this Policy as originally printed nor change or waiver of any of its terms or conditions or statements, whether made before or after the date of this Policy, shall be valid unless set forth in an endorsement added hereto and signed by either the President, Vice-President, Secretary or one of the Assistant Secretaries of the Company. Neither notice given to nor the knowledge of any agent or any person, whether received or acquired before or after the date of this Policy, shall be held to waive any of the terms or conditions, or statements of this Policy, or to preclude the Company from asserting any defense under said terms, conditions, and statements, unless set forth in an endorsement added hereto and signed by one of the said officers.
"AUTHORIZED AGENTS
"(M) No person shall be deemed an agent of the Company unless such person is authorized in writing as such agent by either the President, one of the Vice-Presidents, Secretary or one of the Assistant Secretaries of the Company."
It is stipulated and agreed that the Policy above mentioned covered thirty-five taxicabs owned and operated by the plaintiff. The court below rendered judgment for plaintiff on the verdict.
The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
This was an action brought by the plaintiff against the defendant to recover on a policy of indemnity or liability insurance issued by the defendant, insuring the plaintiff as a taxicab company *Page 793 
against liability from the operation of its taxicabs. The policy was in full force and effect and the premium was paid when the accident occurred. The plaintiff brings this action to recover against defendant certain sums of money paid out by it and as shown by judgment recovered against it, and contends that this was done under the terms of the policy above set forth; that the action was brought against it by passengers for injuries alleged to have been caused by the negligence of plaintiff. It is the plaintiff's contention that the language of the policy authorizes the assured to render such immediate surgical relief as is imperative, without the consent of the company; that it appoints the assured the agent of the insurance company to employ such immediate surgical relief at the expense of the company, and is advance authorization to do so. Such a purpose is both humanitarian and serves the best interest of the company and the assured by mitigating damages. That the provision is not one of forfeiture, but only a limitation on expense to be incurred for the company. We think the contention correct.
The defendant in its brief states some of its contentions thus: "The Court erred in refusing, upon motion of the defendant, to strike from plaintiff's pleadings all references by the plaintiff to a compromise settlement with claimants other than Dorothy Rumley and in admitting evidence relative thereto over the objection of the defendant. In view of the specific provisions of the indemnity contract of insurance, entered into between the plaintiff and the defendant, relating to the matter of the extent to which the plaintiff could employ surgical relief, the condition precedent to the right of the plaintiff to bring action against the defendant to recover under the policy contract, change or waiver of the terms or conditions, notice or knowledge of any agent or person, and the limitation on who should be deemed an agent of the defendant, the Court erred as to the admission of evidence over the objection of the defendant, particularly on the questions of estoppel or waiver." We think not.
In Smith v. Fire Ins. Co., 175 N.C. 314 (317-18), we find: "`The rule of construction prevails almost universally that contracts of insurance are construed against the insurer and in favor of the insured, and this has not been changed by the adoption of standard form of insurance. Wood v. Ins.Co., 149 N.Y. 385; Gazzam v. Ins. Co., 155 N.C. 338; Cottingham v. Ins.Co., 168 N.C. 265.' Johnson v. Ins. Co., 172 N.C. 146. Doubts as to the meaning of ambiguous terms and phrases are resolved against the insurer, and Mr. Vance says in his work on Insurance, quoted in Jones v. CasualtyCo., 140 N.C. 264: `Probably the most important general rule guiding the courts in the construction of insurance policies is that all doubt or uncertainty, as to the meaning of the contract shall be resolved in favor of the insured.' . . . Johnson v. Ins. Co., supra: `The courts look with disfavor upon forfeitures.' *Page 794 Skinner v. Thomas, 171 N.C. 98, and the trend of modern authority is that a stipulation in a policy which might avoid it does not have this effect if it in no way contributes to the loss. Cottingham v. Ins. Co.,168 N.C. 264."
In Baum v. Ins. Co., 201 N.C. 445 (449), it is written: "Law and equity abhors a forfeiture. To make void a policy like the present, the language of the provision in the policy and the rider in controversy, must be free from ambiguity."
In the present action there was liability over and above the policy limits, and the cab company paid more than the policy limits. To say that it would forfeit its insurance by undertaking to mitigate its own liability by furnishing medical and nursing aid without the insurance company's consent, would be unreasonable and hard measure. Furnishing medical, hospital or nursing aid could in no way contribute to loss or liability on the part of the insured or the insurance company.
In Barber v. R. R., 193 N.C. 691 (696), the Court said: "The defendant, not knowing whether it was liable or not, had the humanity to take plaintiff, who was struck by its engine, to a hospital in Danville and employed Dr. Miller to attend him. It was an act of mercy which no court should hold in any respect was an implied admission or circumstance tending to admit liability. If a court should so hold, it would tend to stop, instead of encourage, one injuring another from giving aid to the sufferer. It would be a brutal holding, contrary to all sense of justice and humanity."
The following is in the record:
"State of North Carolina — Insurance Department.
"No. 88284 — Date 4/1/38.
"The American Fidelity Casualty Insurance Company, of Richmond, Va., has been licensed for the year ending March 31, 1939, and James E. Gay, Jr., of Winston-Salem, N.C. is the duly authorized and licensed Adjuster agent for said Company. This license expires March 31, 1939, unless sooner revoked. Dan C. Boney, Insurance Commissioner. Fee Paid $2.00."
Much evidence was introduced on the part of plaintiff that Gay authorized and ratified the payment of the doctors and nurses. The evidence disclosed that Dorothy Rumley was severely injured, sustaining fractures of the pelvis and scapula, severe cuts, injury to her knee, a severe brain concussion and was in a semi-conscious condition for 8 or 9 days. The nurse, Mrs. McGee, testified that in her opinion the girl was in "imperative need for nursing, immediate nursing attention" at the time the nurse *Page 795 
first saw her, and that this condition continued until she left the hospital. The nurse, Mrs. Grace Shore, testified to the same effect.
In Bobbitt Co. v. Land Co., 191 N.C. 323 (328), is the following:"Hoke, J., in Powell v. Lumber Co., 168 N.C. p. 635, speaking to the subject says: `A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually "confided to an agent employed to transact the business which is given him to do," and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed. Latham v. Field, 163 N.C. 356;Stephens v. Lumber Co., 160 N.C. 107; Gooding v. Moore,150 N.C. pp. 195-198; Tiffany on Agency, pp. 180, 184, 191 et seq. The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work entrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment. Law Reporting Co. v. Grain Co.,135 Mo. App. Rep., pp. 10-15; 31 Cyc., pp. 1326-1331,'" citing many authorities. Warehouse Co. v. Bank, 216 N.C. 246 (253).
The license reads: "Jas. E. Gay, Jr., is the duly licensed adjuster agent for said Company." Black's Law Dictionary, p. 57, defines "Adjuster": "One who makes any adjustment or settlement. Popa v. Northern Ins. Co.,192 Mich. 237, 158 N.W. 945, 946, or who determines the amount of a claim, as a claim against an insurance company. Samchuck v. Ins. Co. of NorthAmerica, 99 Or. 565, 194 P. 1095." The question here was one of adjustment. We think, under the evidence, Gay had authority to make and ratify the employment of doctors and nurses. We think the terms of the policy permits this "such immediate surgical relief as is imperative without the written consent of the Co." Surgical relief would include nurses.
The insurance company, after notice to its adjuster Gay that the cab company had employed doctor and nurses and had agreed to pay the nurses, after similar notice to the attorney employed by it to defend the suits and by inference notice to the insurance company's agent and *Page 796 
branch office manager, C. B. Trent, continued the defense of the suits. Its attorneys filed answer in the Rumley suits and some four or five months after such notice to Gay, Hutchins and Trent, the company compromised and settled the claim of another passenger in the same taxicab, who was injured in the same accident. Defendant contends that allegations and proof of such settlement was incompetent. Ordinarily an offer of compromise is incompetent, as is the fact that a defendant has settled the claim of one claimant when sought to be introduced by another claimant whose claim is based on the same or similar facts. Dorothy Rumley, for instance, probably could not have introduced in evidence against the cab company the fact that it or its insurance carrier had settled with another passenger. It would not be doubted, however, that if the insurance company had defended a suit brought against the cab company by the other passenger that fact would be admissible as tending to show that the insurance company was doing so under the terms of the policy, and would be evidence of a waiver on its part of the alleged breach of condition of the policy or a ratification of the employment of medical aid. The material fact was not that the claim of the other passenger had been settled, but that the insurance company recognized its continuing obligation under the policy to defend or settle, as it deemed best, the claim of the other passenger.
In Lowe v. Casualty Co., 170 N.C. 445 (447), we find: "The failure of the defendant to defend the suit, after repudiating its liability to the assured, constituted a distinct breach of contract and justified the plaintiff in defending it at his own expense. Beef Co. v. Casualty Co.,201 U.S. 173."
In 7 Couch Cyc. of Insurance Law, sec. 1875 (e), at page 6255, it is said: "If the insurer refuses to defend a suit against the insured under the policy stipulations and insured is compelled to undertake the defense and does so, insurer is liable for the amount of the judgment and expenses incurred in conducting said defense." In Insurance Co. v. Harrison-WrightCo., 207 N.C. 661, matters involved in this case are decided in that case in line with the contentions of plaintiff.
In Anderson v. Ins. Co., 211 N.C. 23 (27), it is written: "It goes without saying that the compromise amount sued for by plaintiff, which was paid by plaintiff to those injured, must be reasonable and made in good faith."
The general rule is stated in Huddy, Encyclopedia of Automobile Law (9th Ed.), Vol. 13-14, sec. 294, as follows: "By denying liability or refusing to settle claims against insured, which are covered by the automobile indemnity policy, the insurance company commits a breach of the policy contract and thereby waives the provisions defining the duties and obligations of the insured. Thereafter, the insured may properly assume *Page 797 
responsibility for the conduct of his own defense of the case, and may either continue the litigation and go to trial with the case, or, if his judgment so dictates, he may make a reasonable settlement of the claim. Under such circumstances, he may recover from the company the amount which is reasonably required to effect the settlement as damages ordinarily and naturally resulting from the insurer's failure to defend the action, even though the contract provided for recovery only when the payment is in satisfaction of a judgment."
The defendant contends: "In view of the specific provisions of the indemnity contract and the complete lack of evidence on the part of the plaintiff tending to establish specific authority in either the witness James E. Gay or Fred S. Hutchins to bind the defendant by contract or to waive any of the provisions of said contract, the Court erred in overruling the various motions of the defendant for judgment as of nonsuit." We think not.
We think the language of the contract gave authority and the evidence on the record is plenary that Jas. E. Gay, Jr., and Fred S. Hutchins, the attorney, had implied, if not express, authority to bind defendant in the aspects claimed by plaintiff.
In Horton v. Ins. Co., 122 N.C. 498 (503-4), this Court said: "It is well settled in this State that the knowledge of the local agent of an insurance company is, in law, the knowledge of the principal; that the conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer, and that such waiver may be presumed from the acts of the agent. . . . One further citation will suffice: Wood on Insurance, 496, cited and approved in Collins v. Ins. Co.,79 N.C. 279, at page 284, says: `When the insurer, knowing the facts, does that which is inconsistent with its intention to insist upon a strict compliance with the conditions precedent of the contract, it is treated as having waived their performance, and the assured may recover without proving performance; and that, too, even though the policy provides that none of its conditions shall be waived except by written agreement. . . . And such waiver may be implied from what is said or done by the insurer. So, the breach of any condition of the policy, as against an increase of risk or by keeping of certain hazardous goods . . . or, indeed, the violation of any of the conditions of the policy, may be waived by the insurer, and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken.'" Coniglandv. Ins. Co., 62 N.C. 341; Ins. Co. v. Powell, 71 N.C. 389; Grubbs v.Ins. Co., 108 N.C. 472; Dibbrell v. Ins. Co., 110 N.C. 193; Strause v.Ins. Co., 128 N.C. 64; Colson v. Assurance Co., 207 N.C. 581. These cases likewise establish the proposition that knowledge of an agent or adjuster of the insurance *Page 798 
company acting within the scope of his employment will be imputed to the insurance company.
In Colson v. Assurance Co., supra, at pp. 583-4, it is said: "InLaughinghouse v. Ins. Co., 200 N.C. 434 (436), speaking to the subject, we find: `It is held that in the absence of fraud or collusion between the injured and the agent, the knowledge of the agent, when acting within the scope of the powers entrusted to him, will be imputed to the company, although the policy contains a stipulation to the contrary. Short v.LaFayette Ins. Co., 194 N.C. 649; Ins. Co. v. Grady, 185 N.C. 348.'"
It is well settled that the motion made by defendant to set aside the verdict as to certain issues was in the sound discretion of the court below.
The defendant contends that there was error in the charge of the court below by stating the law erroneously; by failing to apply the law to the facts; by stating law to which no facts were applicable; by failing to define the provisions of the policy contract in controversy, and by failing to charge the jury on the law applicable to this case.
None of the contentions can be sustained. We think the charge of the court below, taken as a whole, fully complied with all the matters complained of by defendant. After a careful review of the charge, we can detect no prejudicial or reversible error. Certain matters complained of by defendant cannot be sustained — they were subordinate features and no prayer was requested. We think the issues submitted by the court determinative of the controversy. The record is a long one, the able briefs cover every aspect of the case. On the whole record, we find
No error.
STACY, C. J., BARNHILL and WINBORNE, JJ., concur in result.